## HIGHTOWER *versus* IVY.

The indorsement of a promissory note is the highest evidence of the nature of the agreement between the parties; and evidence of a parol agreement made at the time, varying the legal liability, is inadmissible.

Proof of the insolvency of the maker of a note, at the time of its assignment, will not excuse the assignee from the use of due diligence to collect it from such maker.

Where the maker of a note, after suit brought by the assignee, offers to pay said assignee part of the money, and he refuses to receive it, and it cannot afterwards be recovered, it is negligence on the part of such assignee, and he must, to that extent, sustain the loss.

This was assumpsit, brought by Hightower, in the Circuit Court of Autauga.

Hightower sold a slave to Ivy, who gave his note for the price. Ivy afterwards took up his note, and in lieu thereof, transferred by indorsement, a note which was payable to himself from one Maples, to the said Hightower.

The declaration contained five counts; the first of which was in the usual form upon the assignment; the second and third were also on the assignment, but they contained averments of the insolvency of Maples at the time of the indorsement, and afterwards, and of the defendant's knowledge of the fact: the fourth, was for a slave sold and delivered from the plaintiff to the defendant; the fifth, for money, and embraced all the averments of the common money counts.

It appeared from the bill of exceptions, that the plaintiff offered to prove, that at the time of the indorsement of Maples's note, the defendant promised to pay the same if Maples should fail to do so; which evidence the Court refused to admit, except with reference to the fourth count, which was on the original

sale of the slave. The plaintiff also offered to prove that Maples was insolvent at the time of the indorsement of the note; but the Court refused to admit the evidence, and on this point instructed the jury, that neither the insolvency of the maker of the note, nor the agreement of the indorser at the time, would excuse the plaintiff from due diligence in regard to demand and notice. It appeared also, that after suit was brought against Maples upon the note, he, Maples, offered to pay to the plaintiff about two hundred dollars of the amount, but the plaintiff refused to receive the same on account of the pendency of the suit. In reference to this matter, the Court instructed the jury, that if the plaintiff could have received the money or any part of it, and failed to do so, that he must bear the loss.

Judgment having been given for the defendant; on the part of the plaintiff the case came to this Court.

PICKENS, for Plaintiff—ELLIS & PECK, contra.

By Mr. Chief-Justice SAFFOLD:

This action was assumpsit, brought in the Circuit Court by the present plaintiff against the defendant, on a promissory note payable by S. W. Maples to the defendant, and by the latter indorsed to the plaintiff.

The first count is in the usual form upon the note; the second and third counts are also on the note, with averments of the insolvency of the maker at the time of the indorsement, and ever since, and of the indorser's knowledge of the fact: the fourth count is for a slave sold and delivered by the plaintiff to the defendant; the fifth count is for money lent and advanced, money paid, laid out, &c. and for money had and received. The plea was non-assumpsit.

From a bill of exceptions, it appears that the plain-
tiff introduced as evidence on the trial, the note with
the indorsement as described; also, that at and before
the time of the indorsement, the defendant, as indor-
ser, agreed with the plaintiff, that if the note was not
paid by the maker, he would pay it.    This evidence
was admitted by the Court in reference only to the
fourth count, which was on the sale of the slave, and
ruled to be inadmissible on either of the others.    The
opinion of the Court was further declared—that under
the last count no evidence could be received, other
than proof of *money* actually received; also, that the
evidence offered, to prove that the indorser agreed to
be responsible if Maples did not pay, could be adduc-
ed only under the fourth · count, as it was variant
from the operation of the written assignment.    The
plaintiff proved that after the lapse of five or six
months from the time of the indorsement, the note
was presented to Maples for payment, and not paid,
and that about one month thereafter, he the plain-
tiff, notified the defendant of the fact, and urged pay-
ment of him; that defendant then agreed to return
the slave, which was the consideration for the assign-
ment of the note, and take it up, making no objection
to want of diligence in regard to it; that shortly af-
terwards, however, the defendant refused to do so,
and then told plaintiff that unless he sued Maples in
a few days, he would be no longer bound as an indor-
ser, to which he replied that no court occurred so
soon, but that Maples should be sued to the first
court—to which the defendant made no objection.
The plaintiff then, by proper evidence, proved, that
before the then next court, he did sue Maples, ob-
tained judgment, and had execution levied on a ne-
gro as the property of Maples, which was released

on it being ascertained it did not belong to him.— The plaintiff then offered to prove that at the time of the transfer of the note, and since, Maples had been insolvent; but the Court excluded it as inadmissible. It was also in evidence that the defendant had purchased a slave from the plaintiff, and gave his note for the price, and after it fell due, transferred the note of · Maples to the plaintiff and took up his own. It was also in proof, that Maples had offered to pay the plaintiff about $200 upon his own note, which plaintiff refused to receive, because suit had been commenced upon the note. The Court then instructed the jury, that neither the agreement when the note was transferred, nor the insolvency of the maker, would excuse the plaintiff from *due diligence* in demanding payment, and giving notice to the indorser of the non-payment; and that if the plaintiff had acted so negligently that the indorser would sustain a loss by having the note returned upon him, or if he could have received the money or any portion thereof, and failed to do so, that he must bear the loss; and this was all the evidence offered and received.

The plaintiff now assigns as erroneous,

1. That the Circuit Judge refused evidence of the defendant's promise, made at the time of the assignment, to pay the note in the event the maker did not; except in reference to the count on the original consideration.

In this, the views of the Circuit Court were correct. The assignment in writing at the time plaintiff received Maples's note, is the highest and best evidence of the contract of assignment. This can not be varied or controled by any evidence of a parol agreement to the contrary, of the same date. This principle has been recognised by previous decisions of this

Court. The parol evidence was admitted in reference to the count on the original contract for the slave. The plaintiff was entitled to nothing more. See *Sumerville* vs. *Stephenson & Johnson.*[a]

2. It is also assigned as erroneous, that under the common money count, the Court held no other evidence sufficient than of money actually had and received.

The record purports to disclose all the evidence offered in the case, and shews that no *money* was either lent, paid, laid out or expended, or had and received between these parties. Had there been no evidence of the consideration of the contract, or any shewing that money had passed between the parties, the plaintiff might have been entitled to recover on the money count, unless his right was lost from his neglect to use the necessary diligence in collecting from the maker, and fixing the liability of the indorser. It is said a bill or note is evidence in support of the counts for money lent, paid, had and received; but that it is only so as between the *original* parties to it. Thus, a bill is *prima facie* evidence of money lent by the payee to the drawer, and a note, of money lent by the payee to the maker—(*Clark* vs. *Martin,*[b]) and an *indorsement* is *prima facie* evidence of money lent by the indorsee to his immediate indorser.[c] But it is clearly maintained that these instruments are but *prima facie* evidence of such consideration, and the other evidence in this case fully establishes the contrary. There seems to have been no decision of the Circuit Court against the note as evidence to this extent. I would understand the opinion of the Court on this point to have been only, that the money count was sustainable alone upon evidence of actual cash lent, paid out, or had and received, in the manner charged in the count. I would not infer from the

[a] 3 Stewart, 271

[b] 1 Ld. Raym. 758,—1 Burr. 373-

[c] Bayl. 164, 286 1 Saund. P. & Ev. 279.

language of the exceptions, that the opinion of the
Court was, that no other evidence would sustain the
allegation of money *lent* and *advanced,* or of money
*paid, laid out, and expended,* by the plaintiff for the
use of the defendant, than of money had and received
by the *defendant,* for the use of the *plaintiff*; but if
such were the construction, still the idea of any mo-
ney having passed in either way, is fully negatived
by the bill of exceptions.    It purports to contain all
the evidence, and none such is disclosed; consequent-
ly no injury could have resulted to the plaintiff from
such an opinion, had it been expressed.

A further assignment of error, is, the charge of the
Court, that neither the agreement by the indorser, at
the time the indorsement was made, nor the insolven-
cy of the maker of the note, would excuse the plain-
tiff from due diligence in regard to demand and no-
tice.

It has already been remarked, that the parol pro-
mise, made at the time of the indorsement, can not
vary or control the legal effect of the latter.    The
law in this respect is holden to be, that neither the
bankruptcy, or known insolvency of the drawee of a
bill, or maker of a note, will excuse the necessity of
demand of *payment,* and notice thereof.[a]    The pre- [a] 1 Saund. Pl.
sentment of bills, notes, &c. for *payment,* is a *condition* & Ev. 293, and
*precedent,* as regards the respective parties, who not authorities ci-
being primarily liable, are in the nature of *sureties* ted therein.
that the parties primarily liable, will duly honor the [b] Chitty, jr. on
instrument.[b]    Chitty recognises the principle, that Bills, 48.
neither the known insolvency, or bankruptcy of the
drawee or maker, render presentment unnecessary.[c] [c] ib. 49.
Then, it results, that neither of these grounds could
excuse the want of due diligence.    What was neces-
sary to constitute *due diligence,* under the circumstan-

ces of this case, does not appear to have been made a question. Nor does it appear that any point was made, or any decision given, respecting the defendant's offer, (at the time he received notice of the *nonpayment*,) to return the slave; or the effect, as a waiver of diligence, of any thing that then transpired ; the presumption therefore,, is, that if any instructions on these points were given or requested, the law was correctly expounded.

The last error assigned, is, the instructions to the jury, that if the plaintiff could have received any portion of the money, and failed to do so, on the offer by the maker to pay him, he, the plaintiff, must bear the loss.

The offer of payment, was by the maker, the primary debtor : if the money due on the note, or any portion of it, was tendered to the indorsee while he was the holder of the note ; if he refused to receive it, and by means thereof so much has been lost of the debt, he is chargeable with the neglect; and according to my conceptions of the law and justice of the case, he must sustain the loss. The pendency of the suit was no objection to his receiving the money.

Judgment affirmed.