## ADAMS' Adm'r v. TORBERT.

1. Where a promissory note, payable in Bank, is transferred by indorsement, after maturity, to entitle the indorsee to charge the indorser, he should demand payment of the maker within a reasonable time after he became the proprietor of the paper, and if refused, give notice of non-payment to the indorser : and the insolvency of the maker at the time of the transfer will not excuse the indorsee's neglect thus to proceed.

WRIT of error to the Circuit Court of Marengo.

This was an action of assumpsit by the plaintiff in error, against the defendant. The declaration, so far as it is necessary to notice it, alleges that J. B. Wilkins, on the 31st of May, 1834, made his promissory note for the sum of seven hundred and ninety-one dollars and ninety cents, payable on the first day of Janua-

ry next thereafter, to James A. Torbert or order, at the Branch of the Bank of the State of Alabama at Mobile. On the 9th of February 1836, the payee died intestate, and administration of all his estate was granted to the defendant, who, as such administratrix, indorsed and delivered the note in question to the intestate of the plaintiff. Afterwards the same was duly presented to the maker for payment, which was refused; thereupon, it was protested—of all which the defendant had due notice, &c.

The cause was tried by a jury as on issue joined, but on what plea, the record does not inform us. A verdict was returned for the defendant, and judgment was rendered accordingly. On the trial, the plaintiff excepted to the charge of the judge to the jury. It was proved that the note came to the possession of the defendant as administratrix of the payee after the same v as due; that in 1837, she indorsed and delivered it for a consideration moving to herself; that in less than six months after the indorsement it was presented several times to the maker for payment, who refused to discharge it. On the 16th of August, 1841, the note was again presented to the maker for payment, and upon payment being refused, it was protested for non-payment, and notice thereof given to the defendant.

Evidence was adduced by the plaintiff tending to show that the maker was insolvent at the time the indorsement was made; that soon thereafter he became notoriously insolvent, and still continues so.

Upon this evidence the court instructed the jury, that the presentment of the note for payment, and notice of non-payment to the defendant, was not sufficient to charge her; that the insolvency of the maker would not excuse a due presentment to him, and notice thereof to the defendant; and that the plaintiff was not entitled to recover.

L. Clark, for the plaintiff in error.—The insolvency of Wilkins is a sufficient excuse for not giving notice of a demand, and refusal by him to pay the note, at an earlier day. [2 H. Bla. Rep. 336, 609; 2 Caine's Rep. 343; 4 Cranch's Rep. 141; 11 Johns. Rep. 181; 3 Ala. Rep. 648.]

F. S. Lyon, for the defendant.—There is no pretence that the note was fraudulently indorsed by the defendant. For any thing shown to the contrary, her indorsees were as well informed of

Adams' Adm'r v. Torbert.

Wilkins' situation as herself. In fact the proof does not show he was certainly insolvent at the time of her indorsement. Although the note was transferred after it became due, reasonable diligence was necessary in making demand and giving notice, in order to charge the defendant.

COLLIER, C. J.—Upon the death of the payee and the grant of administration to the defendant, the legal interest in the note in question vested in her, and it was competent for her to transfer it by indorsement. The fact that it was past due, did not render the assignment irregular, or in any manner affect the right of the indorsee to demand its payment of the maker. [Chitty on Bills, 9 Am. Ed. 242, *et post.* "The fact, that the note was over-due when negotiated, did not dispense with a demand and notice. It is the duty of an indorsee to demand payment of the maker within a reasonable time after the transfer to him of paper, and if refused, to give notice of non-payment to the indorser. The undertaking of the indorser is made upon these conditions, and unless they are performed, it cannot be absolute, so as to entitle the holder to his action against him; and in this respect, there is no difference between paper indorsed before, and after it is due."—Such is the language of this court, in Kennon v. McRea, [7 Porter's Rep. 185–6,] and the cases there cited, very satisfactorily sustain the doctrine as we have stated it.

We do not understand that the plaintiff denies these principles, but he insists, that as the maker of the note was insolvent at the time of the indorsement, and has been ever since, that, therefore, the defendant has not been prejudiced by the want of notice of a demand and refusal to pay, and cannot insist upon the want of it, as a defence to the present action. It is laid down generally, that whenever a party to a bill is entitled to his remedy over against another party, either on the bill or otherwise, as he may be prejudiced by the delay in giving him notice of the dishonor, he is therefore entitled to it. It has, therefore, been held, that the drawer of a bill is entitled to notice of its dishonor, although he knew that it would not be paid by the acceptor, provided he had any reason or right to expect that it would be paid by any other person, or he have any remedy over against such person. [Chitty on Bills, 9 Amer. ed. 471.] Again: "the known insolvency of the drawee or acceptor, or maker of a note, or his being in

prison, or the notorious stopping payment of a banker, constitute no excuses, either at law or in equity, or in bankruptcy, for the neglect to give notice of non-acceptance or non-payment; because many means may remain of obtaining payment by the assistance of friends or otherwise, of which it is reasonable that the drawer and indorsers should have the opportunity of availing themselves, and it is not competent to the holders to show that the delay in giving notice has not in fact been prejudicial." [Id. 482.] Parties are entitled to have the chance offered them of making what they can of those who are liable over to them, and if they are abridged of it, the law which is founded upon the usage and custom of merchants, says they are discharged. [Rhode v. Proctor, 4 B. & C. Rep. 517.]

In DeBerdt v. Atkinson, [2 H. Bla. Rep. 336,] it was held, that if the payee of a note lend his name and indorse it, merely to give it credit, and enable the maker to raise money upon it, and knows at the time that the maker is insolvent, this is not a fair transaction, and he is therefore not entitled to notice; and it is no defence for him, that the note was not properly presented for payment. This decision has been often disapproved of. Mr Chitty considers it as erroneous, because the indorser upon paying the note, would have a clear right of action against the maker. In French v. The Bank of Columbia, [4 Cranch's Rep. 164,] the case was remarked upon, and the court say, "In point of reason, justice and the nature of the undertaking, there is no case in which the indorser is better entitled to demand strict notice, than in the case of an indorsement for accommodation, the maker having the value. Chief Justice Kent notices the principle determined in DeBerdt v. Atkinson, and says, "The same point was afterwards ruled by Buller, Justice, at *nisi prius*. [1 Esp. Rep. 303.] But within two years subsequent to the first decision, the same court of C. B. decided directly the contrary, in the case of Nicholson v. Gouthit, [2 H. Black, 609.] We think the reasoning in the last decision the best, and ought to be followed." *Further:* "An indorsement for the credit of the drawer, and without receiving value, is not unusual in the ordinary course of business, but it would be inconvenient and injurious, to dispense with the settled rule of the previous demand and notice in all such cases. It is no doubt the general understanding of the parties, when negotiable paper is indorsed, that the legal consequences shall at-

tach to that indorsement." [2 Caine's Rep. 344–5.] In Agan v. McManus, [11 Johns. Rep. 182,] it was holden that the doctrine applicable to waiver of notice of the dishonor of bills of exchange, does not apply to promissory notes; and it seems now to be settled in England, that if such notice in the ordinary course of business, can be dispensed with in any case, it is only where the insolvency of the maker was known at the time of the indorsement. In the case last cited, the court do not intimate that the known insolvency itself would dispense with the necessity of a demand and refusal; what was said upon that point, was merely intended to show, that such a case was not concluded by the generality of the remark. And we think, it abundantly appears by the law as cited from Chitty on Bills, that the insolvency of the maker cannot excuse the want of notice to the indorser; and whether the indorsement was made for value paid to him, or for the accommodation of the maker, is wholly immaterial. [See Barton v. Baker, 1 Serg't & R. Rep. 334.]

The note on which this action was brought, is made payable at bank, and under our statutes in respect to such securities, is "governed by the rules of the law-merchant, as to days of grace, protest and notice." [Clay's Dig. § 11, 13, 17.] This being the case, the authorities cited are strictly applicable.

The facts show that notice of the non-payment of the note was not given to the defendant until nearly four years had elapsed after its indorsement by her; and the only excuse urged for this neglect, was the insolvency of the maker. This we have seen did not warrant the omission. If the facts had been presented to the court upon a demurrer to the evidence, the court should have rendered a judgment for the defendant, and we think it was authorised to instruct the jury in such a manner as to produce the same result.

Milton v. DeYampert, [3 Ala Rep. 648,] which was cited by the plaintiff's counsel, is entirely unlike the present. There, the note was not indorsed by the payee or other legal proprietor; but by one who was a stranger to it; and it was consequently holden that the ordinary rules applicable to indorsers, did not control the defendant's liability.

Without adding any thing more, the judgment is affirmed.