155 So. 562

### O'NEAL et al. v. CLARK.

4 Div. 749.

Supreme Court of Alabama.

May 10, 1934.

Rehearing Denied June 28, 1934.

⊙⟹For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

E. O. Baldwin, of Andalusia, for appellee.

BOULDIN, Justice.

The questions presented on this appeal concern the liability of indorsers on a certificate of deposit issued by a bank.

Indorsers claim a discharge for want of presentment and notice of dishonor.

Following the order in which questions are presented in brief, we consider the cause on the merits, as presented by the evidence, which is without dispute.

On January 1, 1932, the Andalusia National Bank issued to Dr. Franklin A. Clark, plaintiff, a certificate of deposit for $12,000 in usual form "payable to the order of himself 12 months after date on the return of this certificate properly endorsed. Interest at 4% payable quarterly."

As part of the transaction, and before the delivery of such certificate of deposit, R. N. McLeod, C. A. O'Neal, L. M. Milligan, T. E. Henderson, and C. S. O'Neal, officers, directors, or stockholders of the bank, indorsed the same on the back in blank.

Dr. Clark was, at the time, a depositor of the bank, having on general deposit a sum greater than the amount of the certificate, and, on execution of the certificate, drew his check in favor of the bank for like amount, and same was charged against his checking account.

Without question the indorsers were original parties to the instrument, given in consideration of his leaving the money in the bank, just as if he had made a time deposit in the first instance on the security of such indorsement.

On October 3, 1932, before the maturity of the certificate of deposit, the bank failed, closed its doors, and a receiver took charge for liquidation under the national banking laws. He occupied the same offices, kept regular hours for the business of liquidation up to and including the date of maturity, January 1, 1933.

The instrument was not presented for payment at maturity. It was, prior to maturity, filed with the receiver as a claim against the closed bank, and there remained at date of maturity.

C. S. O'Neal, one of the indorsers, died, and an administrator of his estate was appointed prior to the maturity of the instrument.

On January 2, 1933, the date of maturity (January 1st being on Sunday), Dr. Clark filed in the probate court a verified claim against his estate, which is set out in the report of the case, and on the same day caused a copy to be handed Dudley L. O'Neal, the administrator of such estate.

No notice of dishonor is shown to have been given to appellant T. E. Henderson un-til February 23, 1933, when a letter was written demanding payment from him as a party who had guaranteed the payment of the claim.

The indorsers resided in the town of Andalusia.

Prior to the Uniform Negotiable Instruments Law, which has been in force in Alabama for more than a quarter of a century, there was great want of harmony as to the legal status of indorsers of this class in the decisions of several states.

In Alabama, they were held to be indorsers, prima facie at least, and within the rules of the commercial law touching presentment for payment and notice of dishonor. Carrington v. Odom, 124 Ala. 529, 27 So. 510; Marks v. First National Bank, 79 Ala. 550, 58 Am. Rep. 620; Hooks v. Anderson, 58 Ala. 238, 29 Am. Rep. 745.

By the present law his liability is defined to be that of an "indorser." Code, § 9090; Copeland v. Keller, 221 Ala. 533, 129 So. 571; O'Neal v. Peaden, 228 Ala. 21, 151 So. 877.

"Every indorser who indorses without qualification * * * engages * * * that if it (the instrument) be dishonored and the necessary proceedings on dishonor be duly taken, he will pay," etc. Code, § 9092.

█ A certificate of deposit, such as here involved, having all the requirements of negotiability defined by law, is a negotiable instrument. In effect, it is a promissory note. First Nat. Bank of Abbeville v. Capps, 208 Ala. 235, 94 So. 112; Elmore County Bank v. Avant, 189 Ala. 425, 66 So. 509; O'Neal v. Peaden, supra.

Without question, therefore, this instrument is subject to the requirements of law touching presentment for payment and notice of dishonor.

The Negotiable Instruments Law is quite inclusive, apt, and concise in terms, designed to advise all parties to commercial paper of their legal rights and duties.

Touching presentment for payment, the statute declares: " * * * Except as herein otherwise provided, presentment for payment is necessary in order to charge the * * * indorsers." Code, § 9096.

The statute further declares: "Presentment for payment is dispensed with: (1) Where after the exercise of reasonable diligence presentment as required by this chapter cannot be made." Section 9108, Code.

█ What are the requirements of the chapter as to presentment in this case?

The instrument was payable at a bank, the issuing bank, who was also the maker, the party due to make payment.

"Where the instrument is payable at a bank, presentment for payment must be made during banking hours, unless the person to make payment has no funds there to meet it at any time during the day, in which case presentment at any hour before the bank is closed on that day is sufficient." Section 9101, Code.

This contemplates, as of course, an open going bank, functioning as a bank, with whom people can do the business to be done at a bank.

It is not necessary to go beyond our own decisions for the law of presentment in the instant case.

In Calkins v. Vaughan, 217 Ala. 56, 59, 114 So. 570, 573, it is said:

"As to the duty of the holder of this note to present it for payment at the time and place specified, the following points are settled: (1) The fact that the maker has no funds at the bank designated as the place of payment excuses presentment there during banking hours, but presentment is nevertheless required to be made at some time before the bank is closed. Code, § 9101. (2) The fact that the maker is insolvent at the time for payment does not excuse presentment at the time and place specified. Stocking v. Conway's Ex'rs, 1 Port. (Ala.) 260; Lee Bank v. Spencer, 6 Metc. (Mass.) 308, 39 Am. Dec. 734; 8 Corp. Jur. 689, § 963, and cases cited in note 57. (3) Where a place for payment is specified, presentment must be made there (Code, § 9099), if it can be done by the exercise of reasonable diligence (Code, § 9108). (4) If the place specified has ceased to exist, presentment there will be excused; and in that case personal presentment to the maker at another place is not required. Roberts v. Mason, 1 Ala. 373.

"The decisive question here is whether the specified place of payment—the Merchants' Bank of Montgomery—had ceased to exist, in such sense as to excuse presentment of the note for payment. That question, it seems to us, permits of only one answer. The Merchants' Bank had gone out of business, and ceased to function as a bank. In a business sense—in the sense in which it was designated in the note, and known to the public—it had utterly ceased to exist. It was not continued as a place of business, or as a place where negotiable instruments could be presented and handled, and paid, by the fact that a liquidating agent, operating under the authority of the state banking department, maintained an office somewhere in Montgomery for the purpose solely of winding up its affairs.

"We are constrained to the conclusion that the Merchants' Bank, as a place for presentment and payment, had ceased to exist, and that plaintiff was excused from making presentment there, and was not required to make it elsewhere."

The case of Roberts v. Mason, 1 Ala. 373, cited in the above excerpt, is an apt authority on the point. Some courts and text-writers, have inaptly treated that case as holding a presentation at the Bank of Mobile, under the facts of that case, a sufficient presentation. On the contrary, the case holds the presentation at the Bank of Mobile ineffectual for any purpose. Page 378 of 1 Ala. Without reviewing the facts, the holding is aptly stated in the fourth headnote as follows: "The office of discount, etc., at Mobile, having been disposed of, previous to the maturity of the note, by the Bank of the United States to the Bank of Mobile, and the latter made the agent of the former, 'for settling the affairs of the office of discount,' etc., did not make it necessary for the endorsee to demand payment at the Bank of Mobile."

See, also, Daniel on Negotiable Instruments (7th Ed.) § 1289.

The fact that the receiver winding up the affairs of the closed bank was at the banking place on the day of maturity can make no difference. He had no connection whatever with honoring or dishonoring paper presented for payment. Neither he nor any one else could act for the bank in making payment. As a bank, it had ceased to exist. It was not a mere question of inability to pay as in case of insolvency or bankruptcy, but want of lawful authority to function with regard to the presentation of paper for the purpose of binding indorsers.

We hold, under the law, presentment was dispensed with or excused in the case at bar.

■ Dealing with the question of notice of dishonor, the statute declares: "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." Section 9114, Code.

Notice of dishonor is made a condition to the liability of an indorser, a law-made con-

dition, written into the contract. It is not a question of knowledge of dishonor, otherwise acquired, nor of injury to the indorser from want of notice. The law takes these issues out of such transactions. Stocking v. The Ex'rs of Conway, 1 Port. 260; Hightower v. Ivy, 2 Port. 308; Adams' Adm'r v. Torbert, 6 Ala. 865; Winter v. Coxe, 41 Ala. 207; Daniel on Negotiable Instruments (7th Ed.) § 1123.

■ The mere fact that presentment cannot be made to the maker, and is therefore excused, by no means dispenses with the necessity to give notice of dishonor to the indorser. Calkins v. Vaughan, supra; Hightower v. Ivy, supra.

No question of inability to give notice arises in the instant case. The statute makes provision for giving notice on the death of the indorser. Code, § 9121.

"Except as herein otherwise provided," Code, § 9114, leads to examination of such provisions.

"Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." Section 9131, Code.

No question of waiver is presented in pleadings or proof in the present case.

■ Code, § 9135, defines other cases in which notice of dishonor is not required to be given to an indorser. The only one claimed to have bearing on this case is: "(3) Where the instrument was made or accepted for his accommodation." Section 9135, Code, subd. (3). See, also, Code, § 9106.

The fact that the indorsers were officers or stockholders of the banking corporation, lending their credit to the bank in forwarding a banking business in which they had an interest, does not render them accommodated indorsers. The question is one of primary liability. If the indorser is not the person receiving value, not the debtor due to pay, but entitled to recourse against the maker, in case he is compelled to pay, he is entitled to notice of dishonor, etc. Morris v. Birmingham National Bank, 93 Ala. 511, 513, 9 So. 606; Holman v. Whiting, 19 Ala. 703; 3 R. C. L. p. 1226, § 449.

By the great weight of authority the interest of a stockholder or officer in the corporation whose paper he indorses does not render the instrument one made for the indorser's accommodation. Winter v. Coxe, 41 Ala.

207; Brannan's Neg. Instruments Law, § 115, pp. 868–700; Nolan v. H. E. Wilcox Motor Co., 137 Tenn. 667, 195 S. W. 581; Case v. McKinnis, 107 Or. 223, 213 P. 422, 32 A. L. R. 167; Farmers' & Merchants' Nat. Bank of Fort Worth v. Head (Tex. Civ. App.) 268 S. W. 992; Edwards v. Bryan, 214 Ala. 441, 108 So. 9, 52 A. L. R. 784.

■ Appellee argues that because of the statutory liability of stockholders of national banks to creditors of the bank for amounts equal to their several holdings of stock, notice of dishonor is excused. 12 USCA §§ 63, 64, and 65.

The position is untenable.

This feature of the national banking law provides a fund by way of additional security for the indebtedness of such banks.

It is secondary, not primary in character. It is contractual, in that it inheres in the ownership of stock, and may be regarded as an original obligation, just as the indorsements here are original. See notes to 12 USCA §§ 64 and 65.

This liability is wholly apart, does not grow out of the indorsement here involved. It does not render the instrument one for the indorser's accommodation. Rather to the contrary, the indorsement of the paper, and thereby obtaining the deposit, adds a distinct and separate burden, by way of security, not dependent on the indorsement in any way.

We are of opinion, therefore, that nothing shown in the instant case excused the giving of notice of dishonor to these indorsers, and a failure to give same resulted in their discharge.

■■ This brings us to consider whether the written claim filed with the administrator of the estate of O. S. O'Neal, deceased, was a sufficient notice of dishonor.

The statute prescribes what notice is sufficient, saying: "The notice may be in writing or merely oral and may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored by nonacceptance or nonpayment." Section 9119, Code.

This rather liberal rule is the same in substance as that prevailing in Alabama before the adoption of the Uniform Negotiable Instruments Law. Scarbrough v. City National Bank, 157 Ala. 577, 48 So. 62, 131 Am. St. Rep. 71; Martin, Dumee & Co. v. Brown, Shipley & Co., 75 Ala. 443, 448.

The present notice is sufficient to indicate to the administrator that the debt was still unpaid and that the owner looked to the estate, by virtue of an indorsement or guaranty, but does it meet the requirements of notice of dishonor?

The statute clearly defines "dishonor," saying:

"The instrument is dishonored by nonpayment when:

"(1) It is duly presented for payment and payment is refused or cannot be obtained; or

"(2) Presentment is excused and the instrument is overdue and unpaid." Section 9109, Code.

Can it be said the instant notice carries any information as to these facts which constitute dishonor?

In Saltmarsh v. Tuthill, 13 Ala. 390, 402, this court said: "The rule adopted in the American courts is said to be far more liberal than that generally maintained in the English courts, and proceeds upon the ground that it is sufficient to state in the notice, that the bill or note has not been paid, and either expressly or by implication, that the holder looks to the indorser for reimbursement or indemnity. If, however, there be no statement of the dishonor of the paper, nor any thing from which it can fairly be implied, that a due presentment has been made, the notice would seem to be fatally defective. Story on Prom. Notes, § 354."

Mr. Daniel says: "The mere statement that the bill or note is unpaid is not alone sufficient to intimate by 'reasonable intendment' that the bill or note has been dishonored, for the holder may not have used due diligence in presenting it; and therefore something more must appear, according to the weight and number of authorities on the question." Daniel on Negotiable Instruments (7th Ed.) vol. 2, § 1138, p. 1207.

If the paper is payable at a bank, and the notice shows it was at the bank at maturity, this shows sufficient presentation. Rosenthal v. Levine, 128 Me. 447, 148 A. 675.

No such information appears here. We are constrained by weight of well-reasoned authority to hold the notice here was insufficient. See, also, 3 R. C. L. pp. 1223, 1263, §§ 446, 489; Brannan's Neg. Ins. Law, § 96.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes