## CURRY *VS.* THE BANK OF MOBILE.

1. The office of a demurrer to evidence, is to writhdraw from the jury, the consideration of the facts offered in evidence, to maintain the issue, which the jury were empanneled to try, and to refer them to the court. It is, in effect, the substitution of the court for the jury.

2. The statute authorising summary proceedings by the banks, in collecting claims due them, requires the court to empannel a jury to try the issue, wheie the claim is contested.

3. Where the name of one of the endorsers of a note is similar to that of the maker, a presumption that the same person is both maker and endorser is not so violent, as to amount to *prima facie* evidence of the fact. If they were the signatures of the same person, the fact might be easily proved.

4. *It seems*, that where the protest of a note states, that payment of the note was demanded at the proper time and at the proper place, and that it was protested for non-payment—it is sufficient, without stating from whom payment was demanded, or what reply was given to the demand made.

5. Where the protest states, "that the endorsers have had due notice of the demand and non-payment, and protest of said note, by notice in writing, directed by me as follows: To the endorsers," and left at their offices:—it is sufficient; and an objection that the place where the notice was left, is not described, and that the notary decides that the place is the office of the endorser, will not be sustained.

6. Notice of the dishonor of a note may be given on the same day the protest is made, and must be given on the next day, or placed in the post office, to be sent by the next mail.

7. Where a notice is sent by mail to a distant post office, the place to which the letter containing the notice is directed, must be stated in the certificate of the notary.

8. But where the parties live in the same town, and a notice is

Curry *vs.* the Bank of Mobile.

left at the place of business of the endorser,—it is sufficient to describe it as the office of the person so notified.

9. The certificate of the notice by the notary, is *prima facie* evidence only of the fact recited; and if left at the wrong place, the fact may be controverted.

10. The holder of a note or bill of exchange cannot be permitted by any act of his, to prejudice the right of any party to the instrument, to whom he looks for payment.

11. The deliberate cancellation by the holder, of an endorsement on a note, discharges the liability of such endorser to the holder, and so operating, it will also discharge from liability to the holder, the subsequent endorser.

12. Thus—the holder of a note or bill of exchange, seeking to effect a recovery on such note against an endorser, cannot prejudice the right of such endorser, by striking out the name of a previous endorser, who would be liable to the last.

13. Though, *it seems*, the situation of the endorser, whose name is stricken out, might be explained—as, that he was an accommodation endorser, and not responsible to his immediate endorsee, in any event.

14. In cases where bank debtors are proceeded against summarily by notice, the judgment, whether by default or otherwise, must shew affirmatively every fact necessary to give the court jurisdiction; and in judgments by default, the liability of the defendant for the debt must be also shewn.

15. But where an issue is made up, the verdict ascertains the defendant's liability, as in other cases.

16. A notice in writing, which so far identifies the debt for which judgment will be moved, as to afford reasonable certainty, is sufficient.

17. A corporation can do an act *in pais*, by an attorney in fact; and so, an attorney, acting on behalf of a bank, may give the notice to a bank debtor, required by statute, previous to a motion for judgment.

8 P. 46

18. And such notice need not be under the seal of the corporation.

19. The ancient rule applied to corporations existing by the common law, that they could only act by their common seal, has no application to corporations created by statute.

Error to the Circuit court of Mobile.

Bank notice, tried before *Pickens,* J.

The following was the notice served on defendant:

"The State of Alabama, Mobile county.

"*To James Curry:*

"Whereas you are indebted to the President, Directors & Company of the Bank of Mobile, by a promissory note, and as the endorser, by the name and description of James Curry & Co., of the said note, a copy of which here follows, to wit:

"'$450.                              Mobile, 10 May, 1837.

"'Sixty days after date, I promise to pay Mr. A. H. Gazzam, or order, four hundred and fifty dollars, for value received, negotiable and payable at the Bank of Mobile.                              S. ROULSTON.'"

"And whereas, the said note became due and payable on the 12th day of July, 1837, and the sum of money therein specified has not been paid according to the tenor and effect thereof; by reason whereof, said note was duly protested for non-payment.

"Now, therefore, you will take notice, that the said corporation, by their attorneys, will move for judgment against you, for the sum of money specified in said note, together with the interest thereon, and the award of execution thereon, at the present term of the Circuit court, now in session in the said county of Mobile, and on the ninth Wednesday of said term.

Curry *vs.* the Bank of Mobile.

' "The sheriff of Mobile county will execute this notice. Issued 18 December, 1837.

GAYLE & VANDEGRAFF, Bank Attorneys."

The notice was returned duly executed.

"I, William R. Hallet, President of the Bank of Mobile, do hereby certify, that the note, a copy of which is inserted in the foregoing notice, is now, and was at the time the same was protested for non-payment, really and *bona fide* the property of the said bank.

"Given under my hand, this 25th day of December, 1837. WILLIAM R. HALLET, Pres't."

"And now, at this day, to wit, at a Circuit court begun and held, in and for the county of Mobile, at the court house thereof, on the second Monday after the fourth Monday of October, 1837—on Saturday, the 13th day of January, 1837, being a day of said term, the following judgment was rendered in this cause, to wit :

"Bank of Mobile *vs.* James Curry.—Debt.

"This day came the parties, by their attorneys, and the defendant, by his attorney, demurs to the evidence in this cause, which demurrer being fully heard, it is considered by the court, that the said demurrer is not sufficient to bar or preclude the plaintiffs action, and that the law is for the plaintiffs : It is therefore considered by the court, that the plaintiffs recover of the defendant, the sum of 470 dollars damages, due by the promissory note in the plaintiffs notice mentioned, together with their costs, by them about their said motion in this behalf expended.

The demurrer was as follows :

The plaintiffs moved the court for judgment in this cause, and produced to the court a note, as follows :

Curry *vs.* the Bank of Mobile.

"$450.                    Mobile, 10 May, 1837.

"Sixty days after date, I promise to pay Mr. A. H. Gazzam, or order, four hundred and fifty dollars, for value received, negotiable and payable at the Bank of Mobile.                              S. Roulston."

Upon the back of said note, were the following endorsements:

        "A. H. Gazzam.

        "S. Roulston.

        "James Curry & Co.

        "S. Roulston."

The plaintiff also produced a protest, which is as follows:

        "The State of Alabama, City and County of Mobile.

"By this public instrument of protest, be it known— that on this twelfth day of July, in the year of our Lord, one thousand eight hundred and thirty-seven, at the request of the Bank of Mobile, I, Charles A. Marston, notary public, in and for the city and county of Mobile, in the State of Alabama, duly commissioned and qualified by lawful authority, did produce and present the original note, (a true copy of which is below written,) at the Bank of Mobile, and demanded payment thereof, according to the tenor and effect of said note, and received for reply from ——.

"Whereupon, I, the said notary, at the request aforesaid, did make protest, and by these presents do solemnly protest, as well against the drawer thereof, as against all others, whom it doth or may concern, for all exchange, re-exchange, costs, damages, charges, interest or expences suffered, or to be suffered, for want of payment

of the said note, being in words and figures, as follow, to-wit:

"$450.                    Mobile, 10 May, 1837.

"Sixty days after date, I promise to pay Mr. A. H. Gazzam, or order, four hundred and fifty dollars, for value received, negotiable and payable at the Bank of Mobile.                    S. ROULSTON."

Endorsed on the back—

"A. H. GAZZAM.

"S. ROULSTON.

"JAMES CURRY & Co.

"S. ROULSTON.

"And be it further known, that I, Charles A. Marston, notary aforesaid, do further certify, that the endorsers have had due notice of the demand and non-payment, and protest of said note, by notice in writing, directed by me as follows: 'To the endorsers—and left at their offices.' Thus done and protested at Mobile, on the day and year first above written.

"In testimony whereof, I have hereunto set my hand, and affixed my notarial seal, at Mobile, on the 12th day of July, in the year of our Lord, one thousand eight hundred and thirty-seven.      CHARLES A. MARSTON,

Notary Public."

[Notarial Seal.]

Upon the above proof, the plaintiffs moved the court for judgment, and produced the notice, with the certificate of the President of the Bank, endorsed thereon: whereupon the defendant objected to the rendition of the judgment, and stated to the court, that he would demur to the evidence: whereupon the plaintiffs, notwith-

standing the objection of defendant, (who denied the right of the plaintiffs to do so,) did strike out the name of S. Roulston, on the back of said note, so as to make the endorsement of said note read thus:

A. H. GAZZAM.

~~S. ROULSTON~~

JAMES CURRY & Co.

S. ROULSTON.

And then submitted the said note, with the erasure of said endorsement.

And thereupon the said defendant prays judgment in his favor in said cause, on the proof presented to the court, because he says that the same is not sufficient in law to authorise the rendering of judgment against him, and that the defendant is not bound by the law of the land to answer the same: and this he is ready to verify— wherefore he prays judgment.

And thereupon, the said plaintiffs do aver and maintain, that the said evidence is sufficient in law to entitle them to judgment in this behalf, and they do therefore join in said demurrer, and pray that the court may render judgment for the plaintiffs in this behalf.

The plaintiffs joined in demurrer.

*Gayle*, for plaintiffs in error.
*Stewart*, contra.

ORMOND, J.—The questions of law which are made in this case, arise on a judgment obtained by the the defendant in error, against the plaintiffs in error, on motion upon what is called in the record, a demurrer to the evidence.

Curry *vs.* the Bank of Mobile.

The errors assigned are—

1. That the notice is not such as is required by law, being by the attorney at law of the bank, and not under the corporate seal.

2. The court erred in overruling the demurrer to the evidence.

The last assignment of error will be first considered.

It is impossible to consider the demurrer in this case, a demurrer to evidence.   The office of a demurrer to evidence, is to withdraw from the jury the consideration of the facts offered in evidence, to maintain the issue which the jury were empanneled to try, and to refer them to the court.   It is, in effect, the substitution of the court for the jury.

The statute under which this proceeding is had, requires the court, if the claim is contested, to empannel a jury to try the issue between the parties.   But in this case, it does not appear from the record, that any issue was tendered, or that a jury was empanneled.   There could not, therefore, be a demurrer to the evidence.

As, however, the act upon which this proceeding was had, authorised the court to render judgment without the intervention of a jury, we may consider the statement of facts which appears in the record, as an agreement of record of the facts upon which the judgment of the court was pronounced, and thus give effect to what appears to have been the intention of the parties, by what is called in the record, a demurrer to evidence.

The facts thus set out, are the note on which the motion is founded, with the endorsements thereon, and the protest of the notary for the non-payment of the note.

The record then proceeds to state, that "upon the above proof, the plaintiff moved the court for judgment, and produced the notice, with the certificate of the president of the bank endorsed thereon." It further appears, that the court permitted the plaintiffs below to strike out the endorsement of S. Roulston, it being the second endorsement, and preceding that of the defendant below, though objected to by him.

The sufficiency of this evidence to maintain the action, and also the right of the plaintiffs below to strike out an endorsement previous to that of the plaintiffs in error, will now be considered.

The note on which the motion is founded, is made by S. Roulston, and is payable to the order of A. H. Gazzam. It appears to have been endorsed by A. H. Gazzam, S. Roulston, James Curry *&* Co. and S. Roulston.

It is insisted by the plaintiffs' counsel, that S. Roulston, the endorser, is the same person as S. Roulston, the maker; that therefore, the note, after having been put in circulation by the endorsement of Gazzam, must have become the property of Roulston, the maker; which he contends was in law an extinguishment, and that the note could not afterwards be put in circulation.

The only evidence that this assumption is correct, is the similarity of the two names, and we do not think this of itself sufficient. It might certainly lead to a suspicion, that the two names indicated the same person, but it does not, in our opinion, amount to such a violent presumption, as to be *prima facie* evidence of the fact. It is also open to the objection, that it is not the best evidence in the power of the party to adduce. If they be

Curry *vs.* the Bank of Mobile.

in fact, the signature of the same person, nothing could have been easier than to have proved it beyond doubt; whereas, in the aspect in which the question is now presented, the only evidence of their being the signature of the same person, is, that the two names are spelled alike. Such remote analogies are too uncertain to be the foundation of a judgment, especially in a case where better evidence could have been had.

The objection, therefore, that the note was extinguished, by becoming the property of the maker, and that it could not again be put in circulation, does not arise in this case; and for that reason we refrain from expressing any opinion on that question, as also because we are informed that this point will directly arise in other cases now pending.

It is also contended by the plaintiffs' counsel, that the protest does not state from whom payment was demanded, nor what was the reply to the demand made; and that for that reason, it is insufficient. The protest states, that payment of the note was demanded at the proper time and at the proper place, and that it was protested for non-payment, which could not have been done, if the payment had not been refused, or neglected to be made.

It is also insisted, that the certificate of the notary, that he had given notice to the other parties to the note, is insufficient. The certificate is in these words: "I, Charles A. Marston, notary as aforesaid, do further certify, that the endorsers have had due notice of the demand and non-payment, and protest of said note, by notice in writing, directed by me as follows: ' To the endorsers—and left at their offices.'" It is supposed, that the notice be-

8 P. 47

Curry *vs.* the Bank of Mobile.

ing given on the day the note was protested, was given too soon; but it is well settled, that notice of the dishonor of a note may be given on the same day the protest is made, and must be given on the next day, or placed in the post office, to be sent by the next mail, in the ordinary course of business.

The language used by the notary, in setting forth that he had given notice to the endorsers, has also been objected to; but we do not think it obnoxious to the criticism which has been made on it. He says that he gave notice in writing, of the demand, non-payment and protest, to the endorsers, " *and left at their offices.*" It is objected, that he should have described the place where the notices were left, without undertaking to decide whether the place was the office of the person so notified or not.

If the notice had been sent by mail to a distant post office, it would certainly have been necessary for the notary to have stated the place to which the letter, containing the notice, was directed. But where, as in this case, the parties living in the same town, a notice is left at the place of business of the individual, it is sufficient to describe it as the office of the person so notified.

The certificate of the notice which the notary is authorised to make, was designed by the statute to be *prima facie* evidence only of the fact recited; and if the notary leave the notice at the wrong place, the fact may be controverted, notwithstanding he may have certified that it was properly left. There is, therefore, no objection to the protest.

The court below permitted the defendant in error to strike out the name of the second endorser, (S. Roulston,) though objected to by the plaintiff in error.

Curry *vs.* the Bank of Mobile. ·

In this, the court erred. The holder of a note or bill of exchange, cannot be permitted by **any act of his, to** prejudice the right of any party to the instrument, to whom he looks for payment. If a recovery could be had on this note, against the plaintiff in error, as endorser, he would have a right of action against his immediate endorser; and it is very clear, that the holder cannot impair or abridge this right. The holder has property in the note, and dominion over it; and may release any or all the parties to it; but he cannot be allowed to exercise this privilege, to the prejudice of another's right. The same rule which obtains in favor of a surety, when the creditor, by arrangement with the principal debtor, without the consent of the surety, prolongs the time of payment, or changes the nature of the contract, applies to the discharge of a prior endorser. The deliberate cancellation, by the holder of the endorsement, must discharge the liability of such endorser to the holder, and so operating, it will also discharge from liabilty to the holder, the subsequent endorser. ·

These principles are fully maintained in the following cases—(Brown vs. Williams, 4 Wendell's R. 360; James Lynch vs. Reynolds, 16 Johns. R. 41; Sargent vs. Appleton, 6 Mass. R. 88; English vs. Dailey, 3 Espinassie's R. 49.)

It may be, that the endorsement of S. Roulston is open to explanation. He may be an accommodation endorser for the plaintiff in error, and not responsible to him in any event; or, the name of S. Roulston may be on the paper, not strictly as endorser, but to indicate to the bank discounting the paper, his ownership of the note.

But nothing of that kind appears in the record, and we must judge of the legal effect of the endorsement, from the predicament of the record, as presented to us. These remarks are made, to prevent any conclusion from being drawn, which the opinion is not intended to warrant.

The record further states, that the plaintiff in error " produced the notice, with the certificate of the president of the bank endorsed thereon;" whereupon the defendant, by his counsel, objected, &c. The notice and certificate here recited to have been produced, must, we think, be taken to refer to the notice and certificate, which are sent up with the transcript, and, by reference to them, we find them to be sufficient.

In the case of Bates vs. the Planters' and Merchants' Bank, (page 99,) to which we have been referred, there was no recital in the judgment, that either the certificate or notice were produced to the court; and we there held, that we could not infer that the notice and certificate sent up with the transcript, were those on which the court acted, as it did not appear that any notice or certificate had been produced to the court, or any action of the court had upon them. But we held, that appearing and contesting the claim, was evidence of notice.

In cases of this summary character, the judgment, whether by default or otherwise, must shew affirmatively every fact necessary to give the court the summary jurisdiction. In judgments by default, the liability of the defendant for the debt, must also be shewn. Where an issue is made up, the verdict will ascertain the defendant's liability, as in other cases, in suits brought in the ordinary mode; and it is unnecessary to encumber the

Curry *vs.* the Bank of Mobile.

record either with the proof or fact of notice, or of those facts which constitute the liability for the debt.    Should either party desire to reserve the legal sufficiency of the facts, it can be done by bill of exceptions, or by demurrer to the evidence.    As to the terms of the notice required by the statutes in these summary proceedings, the law was correctly laid down by the court in the case of Lyon vs. the State Bank, (1 Stewart, 466.)    "A notice in writing, which so far identifies the debt for which judgment will be moved, as to afford reasonable certainty, is deemed sufficient."

We are induced to give this as the result of all the adjudged cases, on the statutes authorising these summary proceedings, from the great number of suits instituted in this mode since the increase of the banking capital of the State, and the uncertainty which seems to prevail on the subject.

The first assignment of error is not sustained.    The objection to the notice is understood to be rested by counsel, on the terms of the charter of the bank; the substance of which, so far as it relates to this question, is, that the *corporation* may recover their debts in this summary mode, by giving ten days notice, &c.

It is contended, that as the charter of the bank requires the *corporation* to give notice, it cannot be done by the attorney at law of the corporation.    It cannot be doubted, that a corporation can do an act *in pais,* by an attorney in fact; and we can see no reason why the notice, which is but the commencement of a suit in this summary mode, should not be given by the attorney at law of the corporation, acting for, and on behalf of the

corporation. A corporation can appear in court, by its attorney; and it would be passing strange, if the attorney had not power to take the first step in the cause.

In the case of Osborne vs. the United States Bank, (9 Wheaton, 738,) it was held, that the authority of the attorney to appear in court, need not be under the corporate seal; and in the case of the Bank at Montgomery vs. Harrison, (2 Porter, 540,) that the notice required by the charter of the bank to obtain a judgment by motion, did not require the corporate seal to give it authenticity.

The ancient rule applied to corporations existing by the common law, that they could only act through their common seal, has no application when applied to corporations created by statute. The very frame of our banking institutions supposes that their acts will be done by agents, and it would be intolerable, if not impossible, to require their authentication by the seal of the corporation.

For the error of the court below, in permitting the defendant in error to strike out the name of S. Roulston, (who appears on the record, as second endorser of the note,) without explanation, or any sufficient reason being given therefor,—the judgment is reversed, and the cause remanded, for further proceedings in the court below.