MILOR, *et al.*, *v.* FARRELLY, *admr.*

SUMMARY JUDGMENTS AGAINST SHERIFFS—*personal service of notice—the proper county.* The *notice* of the motion for the summary judgment against the sheriff and his sureties, prescribed-in chapter 97, *Gould's Digest*, must be in writing, and served personally.

This *summary remedy* is in derogation of the common law, and penal in its nature, and must be strictly pursued.

The notice performs the functions of the *summons* and the *declaration*, in an ordinary case.

Where the execution issues from the circuit court of one county to the sheriff of another, this summary proceeding can not be maintained in the former county.

TIME OF HOLDING COURTS. The act of January 21, 1861, fixing the time for holding circuit courts, was a law *in force* on the 4th of March, 1861, within the meaning of the Constitution of 1864; and the previous law, fixing the time for holding said courts, had expired by limitation.

*Error to Pulaski Circuit Court.*

Hon. LIBERTY BARTLETT, Circuit Judge.

WATKINS & ROSE, WILLIAM WALKER, and DUVAL & KING, for plaintiffs.

The statute, as to this summary proceeding, must be strictly construed, and every fact necessary to the jurisdiction of the court must appear of record. 3 *Humph.*, 313; 3 *Yerg.*, 355; *id.*, 85; 7 *Yerg.*, 365; 8 *id.*, 101.

The record should have shown that the court found that Milor was sheriff; (7 *Ala.*, 46;) that the other defendants were sureties; (3 *Humph.*, 313;) that Milor had collected money on the executions, (1 *Ala.*, 635,) and that demand had been made on him. 6 *Porter*, 48.

The proceeding could not be had against the sheriff of another county than that where the court sat. 17 *Geo.*, 187, 292; 10 *Yerg.*, 505.

*Quere.* Should not the demand have been made on the deputy receiving the money? 6 *Ala.*, 314.

The notice should contain everything necessary to be proved. 6 *Porter*, 48.

The evidence fails to show that any money came to the sheriff's hands. 20 *Ill.*, 136. The notice was not in writing, (*Gould's Dig.*, ch. 97, sec. 1,) reading not being a sufficient service. *Wright v. Douglass*, 3 *Barb.*, 554.

It should have appeared that the money was collected on the execution named in the notice. 6 *Ala.*, 276.

The judgment included the costs, on which interest was improperly calculated. 4 *Ala.*, 539 ; 4 *W. and S.*, 52.

The court was not held at the proper time. A jury should have been called. Counsel also urged several other irregularities.

C. C. FARRELLY, for defendant.

The notice was in strict conformity with the statute authorizing the court to render a summary judgment. *It sets out the time, place, the cause, the court before which the motion will be made, the amount, &c. The notice was given not only three days before the motion was made, as required by the statute, but some two weeks before, as shown by the return.* See *Gould's Dig.*, sec. 1, ch. 97.

The *service* of the *notice* on P. F. Chapman, by leaving a copy, &c., was good, valid and legal. See *return on notice;* also, *Gould's Dig.*, ch. 113, sec. 14.

The notice and service being good and sufficient, as required by the statute, and the parties failing to appear and make any defense whatever, the court properly rendered a judgment, by default against them for the amount specified in the judgment—being the aggregate amount of the original judgment, damages and costs, with ten per cent. interest thereon per month, as given by the statute. The returns on the executions show that they were satisfied.

BOWEN, J.

Under the provisions of chapter 97, of Gould's Digest, Charles C. Farrelly, as administrator of the estate of Fred. Heinz, deceased, moved the circuit court of Pulaski county, on the 23d of November, A. D. 1867, for a summary judgment against Volney V. Milor, as late sheriff of Sebastian county, and Daniel McCoy, P. F. Chapman, Charles Milor and Edward Czarinkow, securities on his official bond, for failure on the part of Milor, as sheriff of Sebastian county, to pay over money, collected by him on two certain executions in favor of said Farrelly, as administrator of said Heinz, deceased, amounting in the aggregate to two hundred and seventy-five dollars and forty cents.    Said executions were issued from the office of the clerk of the circuit court of Pulaski county, and were directed to the sheriff of Sebastian county, returnable to the March term, 1866, of said court.    A notice to the said defendants, stating that said administrator would, for failure on the part of Milor to pay over the money collected by him on said executions, move the circuit court of Pulaski county, on the 23d day of November, 1867, for a summary judgment against them, it was, on the 5th day of November, 1867, served on the defendant, P. F. Chapman, by leaving a copy at his usual place of abode, with a member of his family, a white person over the age of fifteen years, and on the other defendants on the 6th day of November, 1867, by reading the same in their presence and hearing, at Sebastian county, Arkansas.

The chapter of the Digest, under which these proceedings were instituted, requires notice in writing to the defendants. This requirement is not fulfilled by service like that in this case.    Each defendant against whom judgment is rendered must have had delivered to him, in person, a notice in writing. See the case of *Williams v. Bunnell*, 4 *Ark.*, 136 ; also, the case of *Hart v. Gray*, 3 *Sumner*, 339.

This rule is sustained by Judge STORY, in the last cited case, by reasons which we deem unanswerable.

Notwithstanding the judgment entry herein shows that the defendants had "three days' notice, in writing, according to the statute in such case made and provided," this statement is not sustained by the sheriff's return, which, on the contrary, shows that the defendants did not receive the notice in writing contemplated by section 1 of chapter 97.

The summary remedy created by the statute, being in derogation of the common law, and penal in its nature, must be strictly pursued. The notice in writing, required, not only performed the duty of the summons, but, also, that of the declaration, and must, in the language of this statute, contain a succinct statement of the cause for, and the court before, which the motion will be made, and should be directed to the sheriff and his securities, designating him and them as such. Defects in the substance of the notice are not cured by a motion containing all the necessary averments, simply because the statute requires these statements to be contained in the notice, and does not require the motion to set out any thing. Indeed, we see no reason why the motion need be in writing, at all, but may be made orally, for a judgment, for the causes set out in the notice, which, after having performed its office as a summons, takes the place occupied by the declaration in ordinary cases.

The cases in which judgment may be rendered, on motion, are plainly given in section 1, of chapter 97. The second case enumerated therein, under which the present proceeding was had, is as follows: "For failing to pay over money collected upon an execution on demand of the plaintiff, his agent or attorney, for the amount so collected, and ten per centum per month damages from the time such demand was made." The fact that the law only requires, in the notice, a succinct statement of the cause for which the motion will be made, does not dispense with the statement of every fact fixed by the statute as a part of the cause for which judgment will be rendered, but simply means that the statement may be short and concise, and, as the notice fulfills the office of both summons and

declaration, it should, in addition to the other facts, set out the demand.

If the notice thus sets out every necessary fact, and there be an appearance on the part of the defendants, and issue made up by a denial of the facts contained in the notice, a finding of the issues for the plaintiff would make the necessary facts appear affirmatively of record, and the judgment need only show the jurisdiction, and give the conclusion of the law from the premises. But, if there be no appearance, the court, in its entry of judgment, must show, not only the jurisdiction, but the facts constituting the defendant's liability, unless these facts otherwise appear affirmatively of record, as in the case of *Boudurant v. Woods,* which we find on page 547, 1 *Ala.,* where the court declared that it found "that the facts alleged in the notice had been fully proved." This was held sufficient; the notice being a part of the record, and containing all the requirements of the statute. In regard to what the judgment should show, *see* 8 *Porter,* 372; 19 *Ala.,* 373; and *Barry v. Patterson,* 3 *Humphries,* 314. From what we have said, it must not be inferred that the evidence should appear affirmatively of record, but only the conclusions arrived at therefrom.

This brings us to the consideration of another point: The plaintiffs in error claim that, as Milor was sheriff of Sebastian county, he and his securities were not liable to amercement in the circuit court of Pulaski county. This point seems to be well taken. The law under which these proceedings were had, is silent as to where the motion should be made, and as nothing can be taken by intendment, and as the general law of the State provides that suits be commenced in the county where the defendant resides, or may be found, and as the remedy created is against the securities, as well as the sheriff, and as only three days' notice is required, we can not place a construction upon the statute which would require parties living in one part of the State, to appear before the circuit court of a distant county upon only three days' notice, especially when such a construction can only be made by supplying by intend-

ment what the statute does not express. *Pike v. Lytle,* 6 *Ark.,* 212; *State Bank v. Terry, et al.,* 13 *Ark.,* 390; *Cross v. Haldman, id.,* 202; 1 *J. J. Marshall,* 477; 6 *Monroe,* 323.

One further question remains to be considered: The law under which the circuit court of Pulaski county was held, although not being acted under on the 4th of March, 1861, was, nevertheless, a law in force, in the sense used in the Constitution of 1864, having been passed by the Legislature, and approved by the Governor, in January, 1861; and notwithstanding the fact that the previous law, fixing the time of holding such circuit court, was still in operation, it expired by limitation of the law in existence at the time. The change in the time of holding the circuit court of Pulaski county was the result of laws in force on the 4th of March, 1861, and it was clearly not the intention of the framers of the Constitution of 1864, to change the law fixing the time of holding a circuit court, but to wipe out all that transpired after the meeting of the secession convention on the 4th of March, 1861.

In view of the whole record, then, we have concluded that, although the judgment of a circuit court is only voidable by reason of defective service, the judgment in this case is absolutely void, as the defendants were not within the territorial jurisdiction of Pulaski circuit court, and that such court could not, under the circumstances, adjudicate the matter in controversy as between these parties. The writ of error is dismissed.

Chief Justice WILSHIRE, and Associate Justice McCLURE, dissenting.

McCLURE, J., delivering the dissenting opinion, says:

Not being able to arrive at the conclusion just announced, it becomes our duty to give the reasons for our dissent.

The chapter under which these proceedings were had, required three days' notice, in writing, to be served on the sheriff and his securities, before the making of the motion for a judgment.

The return on the notice shows that one of the defendants

was served, by leaving a copy at his usual place of abode, with a white person of the family, over the age of fifteen years, on the fifth day of November, 1867, and that the other defendants were served, by reading the notice in their presence and hearing, on the sixth of November, 1867.

The question now arises, was this the service required by law? The court below said: "Whereupon, it appearing to the court that the defendants have each had three days' notice, *in writing*, according to the statute in such case made and provided, previous to filing said motion, and each of the parties being solemnly called, come not, but make default, and the court being sufficiently advised in the premises, doth consider, order and adjudge," &c. This action of the circuit court was on the 23d day of November, 1867, being more than three days after the parties were notified.

The majority of the court are of opinion that the return of the officer, which discloses the manner in which the notice was served, contradicts the finding of the court, and shows affirmatively that the court below never obtained jurisdiction of the persons of the defendants, in the manner prescribed by law, because, they say, the law in this case required that the defendants should have been each handed a copy of the notice three days before the making of the motion for a judgment.

Every statute changing a form of proceeding, or creating additional remedies, must also recognize a great variety of existing laws, by the assistance of which the new provisions may be carried into effect, or the provisions understood and interpreted. Human wisdom could hardly devise a law, so perfect in all its parts, that would not come within this rule.

To illustrate: The chapter under consideration requires three days' notice, in writing, to be served on the defendants, but fails to provide *who* may serve that notice. Here we are compelled to search the provision of some other law to ascertain who may serve "notices." Under *chap.* 133, *of Gould's Digest*, regulating the practice at law, we find, in section 22, the following: " Whenever, in the *commencement of any suit*, it shall be

necessary to serve *any notice* on either party to such suit, such notice may be served either, first, by an officer, authorized by law to serve original process of the court in which such suit is to be brought or may be pending," &c.

We conclude, therefore, that the notice. may be served by a sheriff, because the object of the notice is to notify the defendants that a suit will be instituted against them by motion.

The next question arising is, *how* it shall be served ? By an examination of the 23d section, we find that : " Every such *notice* may be served in like manner as a writ of *summons*."

We now turn to the 14th section and find that : " A *summons* may be served either by reading the writ to the defendant, or by delivering him a copy thereof, or leaving a copy thereof at his usual place of abode, with some white person of the family, over the age of fifteen years."

An examination of the return of the sheriff discloses that the notice, in this instance, was served in the manner just described, and we are of opinion the service is sufficient.

The next question that now arises, is, was the service of this notice the commencement of a " *suit?*" If we had any doubts on the subject, they are removed by this language, that appears in the majority opinion. They say, " as the general law of the State provides that *suits* shall be commenced in the county where the defendants reside," &c. Now, here they admit that the service of this *notice* was the commencement of a "suit;" therefore we say, that it may be served as directed by law.

For the purpose of further elucidating this subject, let us examine the seventy-sixth section of *chap.* 68, *Gould's Digest.* It reads as follows : " If an officer shall make the money in any execution specified or thereon indorsed, * * * and shall not pay over the same, * * * he shall be liable to pay the whole amount of money made, to the person entitled thereto, with lawful interest thereon, and damages in addition, at the rate of ten per cent. per month, * * * to be recovered in an action against such officer, and his securities on his official bond; or, the party aggrieved may proceed

against such officer, by motion, before the court in which the writ is returnable, in a summary manner, three days' previous notice of such intended motion being given," &c.

In the summary process here provided, it will be observed that the "*notice*" is not required to be "in writing." Now, suppose the action had been brought against the sheriff under the provisions of this law, instead of the act of January 15, 1857, and that the plaintiff, in execution, had come into court and moved for a judgment against the sheriff, and had offered to prove to the court that he, in the presence of witnesses,, two days before, had notified the sheriff that he intended making the motion against the sheriff for failing to pay over the money collected on execution.

We apprehend, under such a state of facts, the court would have said to the plaintiff: "It is true that this statute does not say that this *notice* shall be "*in writing,*" yet *sec.* 11 *of chap.* 50, *Gould's Digest*, declares that "all writs, process, proceedings, and records, shall be made out on paper or parchment; that this *notice* might justly be regarded as a *process;* and, so being, should have been made out on paper or parchment, and *in writing ;* that this notice, as it takes the place of a summons in an ordinary action, serves to show how we obtained jurisdiction of the person, and must be placed on file and constitute a part of the record of the case, so that, if a superior court should be called upon to examine our record on error, or certiorari, such court would be enabled to find that we had obtained jurisdiction in the manner pointed out by law ; that the service of process, verbally, was a thing unknown to the law; and, even if admissible, it could only be placed on the record by the appearance of the defendant, by a bill of exceptions ; and, this being a default, the judgment would avail the plaintiff nothing, because the fact of service could not be placed of record."

It will be remembered that the words, "in writing," do not appear in the seventy-sixth section after the word "*notice.*" Now, in what manner would the sheriff have served

it? We insist that he would have been compelled to have resorted to the manner prescribed by the 14th, 22d and 23d sections, hereinbefore referred to, and that almost any court in christendom would have so held. We conclude, therefore, that the words " in writing," as used in the amendatory act of January 15, 1857, were intended merely as descriptive of the *form* of notice, and *not the manner of serving it*, and that the Legislature never intended to change the usual mode of serving process, but simply used the words " in writing," to give the plaintiff to understand that his notice partook of the nature of a writ, and must be " on paper or parchment," as prescribed by section 11 of chapter 50 of Gould's Digest.

We understand it to be the province of courts, and not only their province but their duty, in construing statutes, to consider the policy and intent of the law, and give it such an interpretation as may appear best calculated to advance its object and effectuate the design of the Legislature, if not in conflict with the organic law.

Now, let us apply this rule to the present state of facts. Before the passage of the law of January 15, 1857, as we have before shown, the plaintiff, in execution, had two remedies. By one, he could commence an action against the sheriff and his securities on the bond; this action, of course, had to be commenced in the county where the sheriff and his securities might reside; by the other, the plaintiff could take a *personal* judgment against the sheriff " *before the court in which the writ is returnable.*" The act of January 15, 1857, nowhere repeals the seventy-sixth section of chapter 68; but, by its terms, enlarges the remedy existing at the time of its passage, by allowing the plaintiff to notify, not only the sheriff, *but his securities.* The mere fact that the person who arranged the subjects in the Digest did not place these acts under the same head, does not establish the fact that they are not to be construed *in pari materia.* The taste of that individual is no rule or guide for our judgment. These statutes are both on the same subject, and the last one creates no new and distinct remedy, but simply

enlarges a remedy already existing. The majority of the court announce that, because Mr. Gould, in arranging his Digest, placed the act of January 15, 1857, in a separate chapter, called " Summary Judgments," therefore, they are bound to construe the law as a separate and distinct act; and announce that " the law under which these proceedings were had is silent as to *where* the motion shall be made ;" and finally declare that it was never intended to rule the sureties out of the county. We concede that when the provisions of two statutes are so far inconsistent with each other that both can not be enforced, the latter must prevail; but we contend that, if by any fair course of reasoning the two can be reconciled, both shall stand. By construing these statutes *in pari materia*, we are no longer left in doubt as to where the motion may be made, for it is clearly and distinctly stated that it shall be made before the court to which the execution is returnable. The argument that it would work a great hardship on the sureties to bring them into Pulaski county, on three days' notice, has nothing to do with the law. Whether the law be politic or impolitic, or whether its provisions be strictly equitable or otherwise, are considerations which ought not to operate with the court in determining its effect. It is the duty of the court to declare, not make the law ; and, in so doing, sentences and phrases ought never to be distorted in order to sustain a favorite opinion. Every provision of the statute, on the same subject, ought to be carefully examined, in order to ascertain the intention of the Legislature, and the court that rejects a portion of one statute, that should be construed *in pari materia*, to sustain what they conceive should be the law, must be regardless of their duty.

*Pike v. Lytle*, 6 *Ark.*, 212, is relied upon as authority, from this court, to show that this action is not of a transitory nature, and that it is of the same class of cases as those of garnishment. There is no similarity between these actions. In the one case you have a judgment against the defendant, and in aid of that judgment you are allowed to in-

quire of every man, whether he is indebted to the defendant, and, if so, in what amount? If he refuse to respond, you are allowed to take judgment against him. In the other, you are simply notifying him that you will take judgment against him for a liability created by the default of his principal. In the one case the law is silent as to where the writ may be sent; in the other, the law declares that the sureties shall appear "*before the court in which the writ is returnable.*"

It is said that this statute is *penal*, and must be pursued strictly. The seventy-sixth section, before referred to, created *the only penalty* against the sheriff and his securities known to the law, and fixed it at ten per centum per month. The act of January *did not* and *does not* create *a simple penalty*, that was not in existence at the passage of the act. This being true, it strikes us as being strictly a *remedial* statute, and as such, entitled to a very liberal construction. The remedy of the plaintiff was extended to the securities of the sheriff, and he was allowed to bring them into the same forum that the seventy-sixth section allowed him to bring the sheriff.

The notice, in our opinion, is sufficient, if it sets out in plain and concise language the substance of any one of the seven causes for which a summary judgment may be taken, and it may be served by the same officer or person, and in the same manner, as a summons may be served.

The record of the court below, in this class of cases, need not show anything but the notice, its manner of service, the appearance or default of the defendants and the rendition of a final judgment. The motion and the proofs that aided the court in coming to its conclusions, constitute no part of the record, the 8th Porter and 1st Alabama to the contrary notwithstanding, unless they are made so by bill of exceptions. The circuit court is a court of general jurisdiction, and if the notice discloses a state of facts for which a judgment might be taken, the proof of facts, or the finding of facts, only going to establish jurisdiction, are not necessary. It is only courts of limited jurisdiction, whose judgments must show affirma-

tively that in their adjudications they have not gone beyond their powers.

We are of opinion, after much reflection : 1. That the service in this case is sufficient ; 2. That all the facts necessary to constitute a valid judgment appear of record in this case; 3. That the court had jurisdiction of the parties and subject matter at the time of the rendition of the judgment; and 4. That, in our opinion, the judgment ought to be affirmed.

Had we reached the conclusions as to the facts, announced by the majority, we have only to say that the *judgment* rendered in this cause would not have been unanimous.