## Williams v. Paintsville National Bank.

(Decided May 23, 1911.)

### Appeal from Johnson Circuit Court.

1. Bills and Notes—Protest—Notice—Protest is unnecessary where a note is not paid at maturity, but notice must be given the endorsers and such as are not notified are released.
2. Putting Note on Footing of Bill of Exchange—Section 483 Ky. St. as to putting a note on the footing of a bill of exchange, is repealed by the Negotiable Instrument Act.
3. Accommodation Endorsers—Persons endorsing a note for accommodation before delivery are joint endorsers but the holder may give notice to one of them and look to him for the debt, it being incumbent on him to give notice to those to whom he looks for reimbursement.

C. B. WHEELER for appellant.

VAUGHAN, HOWES & HOWES for appellee.

· OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

The Paintsville National Bank brought this suit in the Johnson Quarterly court against S. W. Ward, P. J. Williams, H. J. Wheeler and D. J. Wheeler to recover judgment against them as endorsers of a note for $350.00 which had been discounted to the Citizens National Bank, that bank having gone into liquidation, and the Paintsville bank having bought its assets. Upon a hearing of the case in the quarterly court the action of the bank was dismissed as to all of the defendants except P. J. Williams, and judgment was entered against him in favor of the plaintiff. He appealed from that judgment to the Johnson circuit court where the case was tried anew, and a judgment was also rendered against him. From that judgment he prosecutes the appeal before us.

The note is in these words:

"$350. Paintsville, Ky., November 15, 1904.

On demand I promise to pay to the order of P. J. Williams, H. J. Wheeler and D. J. Wheeler Three Hundred and Fifty Dollars, negotiable and payable at the Citizens National Bank of Paintsville, Paintsville, Kentucky.

Value Received,

R. V. Nickell."

On the back of the note are the following endorsements:

"Henry J. Wheeler, S. W. Ward, D. J. Wheeler, P. J. Williams."

Also the following:

"Credit $150 November 26, 1904."

The case was tried in the circuit court before the judge upon the law and facts. His finding of facts is as follows: On November 15, 1904, P. J. Williams, D. J. Wheeler, R. J. Wheeler and S. W. Ward endorsed the note sued on for the accommodation of the maker, R. V. Nickell, the agreement at the time being that it was to be paid by Nickell within three days. Nickell discounted the note to the bank. On November 26, 1904, payment was demanded. Nickell then paid $150 on the note, and the cashier issued a notice to P. J. Williams notifying him of the failure of the maker to pay the balance, and that the bank would look to the endorsers for the money. This notice was put in a sealed envelope and addressed to

Williams at his post office, and mailed at Paintsville. The cashier did not notify any of the other endorsers except Williams. No protest of the note for non-payment was made at that time, and it was afterward protested on April 1, 1905, notice of protest being then given to all of the parties.

There were several defenses set up in the answer, and the circuit judge made findings as to each of the other defenses but they need not be noted in this opinion as the finding of the circuit judge must be treated as the verdict of a properly instructed jury, and cannot be disturbed under the evidence.

The note in question having been executed after the passage of the Negotiable Instrument Act approved March 24, 1904, is governed by the provisions of that act. It was not necessary under that act that the holder of the note should prosecute the maker to insolvency in order to hold the endorser. The rule previously in force in this State is changed by that act, Sec. 66 of which makes the endorser liable for the amount if the necessary proceedings on dishonor are duly taken. Section 63 of the Act is in these words:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

All four of the endorsers simply endorsed the note in blank. No words were added showing an intention to be bound in any other capacity than endorser. They all endorsed it before its discount to the bank, and they were all four joint endorsers, Ward being liable as endorser precisely as the other three. It was accommodation paper, gotten up for the benefit of Nickell, who discounted it to the bank.

Section 70 of the Act is as follows:

"Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is by its terms, payable at a special place, and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part. But except as herein otherwise provided presentment for payment is necessary in order to charge the drawer and endorsers."

Section 152 is as follows:

"Where a foreign bill appearing on its face to be such is dishonored by non-acceptance, it must be duly protested for non-acceptance, and where such a bill which has not previously been dishonored by non-acceptance is dishonored by non-payment, it must be duly protested for non-payment. If it is not protested, the drawer and endorser are discharged. Where a bill does not appear on its face to be a foreign bill, protest thereof, in case of dishonor, is unnecessary."

Under section 70 presentment of the note for payment was necessary in order to charge the indorsers, but by section 152 protest was unnecessary as the note was not a foreign bill of exchange. It is insisted that under section 483 Kentucky Statutes the note had been put upon the footing of a bill of exchange as it had been discounted by the bank. But the act minutely defines bills and notes, and by it all laws inconsistent with the act are repealed. The necessary effect of the act is to repeal section 483 Kentucky Statutes which is inconsistent with the provisions of the act. Sections 89 and 90 of the act are as follows:

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each endorser, and any drawer or endorser to whom such notice is not given is discharged." (Sec. 89.)

"The notice may be given by or on behalf of the holder, or by or on behalf of any party to the instrument who might be compelled to pay it to the holder, and who, upon taking it up, would have a right to reimbursement from the party to whom the notice is given." (Sec. 90.)

No notice of dishonor having been given the endorsers other than P. J. Williams, they are discharged, but the circuit court held as a matter of law that the bank could give notice to such endorsers as it desired to hold, and that it was incumbent upon Williams if he wished to look to the other indorsers for contribution, to give notice to them. It is insisted for him that as all four were equally liable he had a right to look to the other three for contribution and that when the bank released them, he was discharged.

Sections 68 and 107 also provide:

"Joint payees or joint endorsers who endorse are deemed to endorse jointly and severally." (Section 68.)

"Where a party received notice of dishonor, he has, after the receipt of such notice, the same time for giving notice to antecedent parties that the holder has after dishonor." (Section 107.)

Before the passage of the statute, this court held that notice to one of several joint endorsers, although not partners, was notice to all. But the act in question clearly changes that rule. Before the passage of the act, the rule as to successive endorsers recognized by the current of authority, was that the holder of a bill need not notify all the endorsers in order to fix the liability of the particular endorser receiving notice, and that where he notified his immediate endorser, he could recover from him, although he gave no notice to a previous endorser; the reason usually given for the rule being that the holder was not supposed to know the residence of any of the parties except the one who endorsed the paper to him. (4 Am. and Eng. Encyc. of Law, 339; 7 Cyc., 1067.) But while this was the rule as between successive endorsers, as to joint endorsers the rule was that notice must be given to each of them or all would be released. (4 Am. and Eng. Encyc. of Law, 414; 7 Cyc., 1075; 2 Daniel on Negotiable Instruments, section 999.) This court in Bank of Kentucky v. Floyd, 4 Met., 161, after setting out the legal effect of the facts there before it, thus stated the rule as to the effect of releasing other parties to the instrument:

"The rule, as stated in more general terms, is, that the holders discharging, or giving time to any of the parties on a bill, will be a discharge of every other party who, upon paying the bill, would be entitled to sue the party to whom such discharge or time has been given."

In Bowie v. Hume, 13 Ap. Cas. D. C., 286, notice was given to only one of two joint endorsers and it was held that both were released. The court said:

"The notice of dishonor to each endorser was required in order to preserve the right of contribution as between them."

The above authorities rest on common law principles, the cases being all decided independently of the negotiable instrument act which has since been adopted in quite a number of States. The common law rule as to

joint endorsers was not applied as to endorsers liable severally. By our statute all parties jointly liable may be sued severally or jointly. It will be observed that by section 89 of the act notice of dishonor must be given to "each endorser," and "any endorser" to whom such notice is not given is discharged. The holder of the paper by the terms of the statute loses his right to look to any endorser for the payment of the paper to whom he does not give notice of dishonor, but only those to whom he fails to give notice are discharged. The meaning of the section is shown by section 90, which immediately follows, providing that the notice may be given by the holder or by any party to the instrument who upon taking it up would have a right to reimbursement from the party to whom the notice was given. Before the act was passed this was the common law rule as to successive endorsers. Under the common law rule it was held that though the endorsers signed one under the other, parol proof might be received to show that they signed jointly and that the order in which their names were placed on the paper was immaterial. So it happened that the holder who gave notice to the last endorser as the names stood on the paper, and not to the others, sometimes lost his debt, though he acted on the face of the paper, and in ignorance of the facts. The purpose of the act is to apply the same rule to all endorsers and to avoid the uncertainty which had resulted from the application of the common law rule where from a mistake as to the facts the rights of the holder had been lost by his failure to give notice of dishonor to some of the endorsers. Under the act the holder many give notice of dishonor to the endorser to whom it desires to look for the payment of the money, and it is then incumbent on him within the time specified in the act after he received the notice from the holder to give notice to those to whom he may wish to look for reimbursement. Antecedent parties within the meaning of section 107 are those antecedent in liability, and to whom the person giving the notice has a right to look for reimbursement; for by section 90, any party to the instrument may give the notice "who upon taking it up would have the right to reimbursement from the party to whom the notice is given." As to his part of the debt a joint endorser may be looked to for reimbursement by his co-endorser who receives notice of dishonor from the holder. As to his part of the debt he is an antecedent party; for to this extent it is as between them, his debt. The opera-

tion of section 107 is not confined to those who are antecedent in liability as to the whole of the debt; but it applies to all who are antecedent as to any part of it. The endorsers know their relation to each other better than the holder, and the purpose of the act is to provide a uniform rule which the holder may follow in all cases as the rule was applied in the case of successive endorsers at common law.

Judgment affirmed.