No. 23,061.

W. S. CRANE, substituted for THE CUNNINGHAM NATIONAL BANK, *Appellee*, v. J. H. DOWNS, revived in the name of NELLIE G. DOWNS, as Administratrix, and F. H. THWING, *Appellants*.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE — *Findings of Fact* — *Evidence*. Certain named questioned findings of fact were supported by evidence.

2. SAME. Part of a certain named questioned finding of fact was not supported by evidence.

3. SAME—*Accommodation Indorser*—*When Entitled to Notice of Dishonor on Nonpayment*. A stockholder, who is also an officer and director in a Missouri corporation, and who, without receiving any direct consideration therefor and without any language of qualification, signs his name on the back of a note given in Missouri by the corporation to itself to be negotiated for the purpose of procuring money for the corporation, is liable under the Missouri negotiable-instruments law as an indorser, and is entitled to notice of dishonor on nonpayment of the note. (*Auto Co. v. Winters*, 277 Mo. 425, followed.)

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed March 12, 1921. Reversed.

*W. W. Schwinn*, of Wellington, *Robert Stone, E. H. Gamble, George McDermott, Robert Webb*, all of Topeka, and *C. C. Madison*, of Kansas City, Mo., for the appellants.

*W. T. McBride*, of Wellington, *H. W. Herrick*, of Winfield, and *A. W. Thurman*, of Joplin, Mo., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff recovered judgment on two promissory notes. The defendants appeal.

The action was tried without a jury and the court made special findings of fact and conclusions of law, as follows:

"FINDINGS OF FACT.

"1. The two notes sued on in this case were in the same form except one was for twenty-four hundred dollars ($2,400) and the other for twenty-five hundred dollars ($2,500); both were indorsed in the same way, by the same persons. The note for twenty-five hundred dollars, together with indorsements, was as follows:

"'$2,500.00                                ST. LOUIS, Mo., Oct. 20, 1913.

"'Four months after date we promise to pay to the order of ourselves twenty-five hundred dollars for value received, negotiable, and payable without defalcation or discount, and with interest from date at the rate of six per cent per annum.                     ORAH LAND AND MINING CO.,

By JAMES K. COCHRAN, President.

"'Attest: ORAH D. RIDGLY (Sec.).'"

"Indorsed as follows: Orah Land and Mining Co., by James K. Cochran, President. Attest: Orah D. Ridgly (Sec.). James K. Cochran. Orah D. Ridgly. J. T. Long. J. H. Downs.

"The notes were both executed in the state of Missouri. The Orah Land and Mining Co. was a Missouri corporation. Both of the notes were signed and indorsements made before they were negotiated.

"2. After being signed and indorsed the notes were delivered by the managing officers of the Orah Land and Mining Co. to one C. D. Rodgers, of Mexico, Mo., for the purpose of having the same negotiated by him to raise money for the company. Rodgers made arrangements with W. S. Crane, of Carthage, Mo., the plaintiff in this action, to borrow money from the Cunningham National Bank of Joplin, Mo., and both Rodgers and Crane signed a note for five thousand dollars ($5,000) payable to the bank. Rodgers turning over the notes sued on to Crane to hold as collateral security.

"3. The plaintiff, Crane, afterwards paid the note at the Cunningham National Bank personally and has never collected anything on the notes sued on, either principal or interest.

"4. Four thousand five hundred dollars of the proceeds of the five thousand dollar note given by Rodgers and Crane to the Cunningham National Bank was used to purchase land for the Orah Land and Mining Co., the balance of the five thousand dollars ($5,000) being the commission to Rodgers and the discount on the five thousand dollar ($5,000) note.

"5. The Orah Land and Mining Co., at the time of the issue of the notes in question, did not have sufficient commercial credit to enable it to

Crane v. Downs.

float its notes without the indorsement of other persons, and was practically insolvent at the time of the negotiation of the notes in question, and was in the same condition at the maturity of the notes, which facts were known by J. H. Downs at the time he indorsed the company's notes, and at the time of their maturity.

"6. Rodgers and Crane when they took the notes in question lent the money on the strength of the personal indorsement of J. H. Downs on said notes.

"7. J. H. Downs at the time he indorsed said notes was a large stockholder in the Orah Land and Mining Co., and was an officer and director of the corporation.

"8. No presentment for payment was made of said notes to the makers or indorsers and no notice of dishonor was given to Downs.

"9. The Negotiable-instruments law of Missouri in effect at the time of the issuance and negotiation of said notes was the same as that of Kansas with reference to liability of indorsers, presentment for payment and notice of dishonor to indorsers.

"10. J. H. Downs signed the notes in suit for his own accommodation and had no reason to expect that the notes would be paid by the Orah Land and Mining Co., if presented for payment.

"CONCLUSIONS OF LAW.

"J. H. Downs was liable as a maker of said notes and the plaintiff was not required to present the notes to him for payment or to give him notice of dishonor, etc.

"The plaintiff is entitled to judgment for the face of the notes and interest, and for the costs of this action and to have the land attached in this action sold to pay said judgment."

1. The defendants concede the correctness of all the findings of fact except those numbered five and ten, and contest those on the ground that there was no evidence to sustain them. An examination of the evidence abstracted shows that the fifth finding of fact was sustained thereby. The financial statement of the Orah Land and Mining Company, on its face, showed a strong financial condition, but in the statement the value of the assets was placed much too high. When their actual value was compared with the liabilities, the assets exceeded the liabilities, but not in a very great proportion. So narrow was the margin that the court was justified in finding that the corporation was practically insolvent.

It cannot be said that that part of the tenth finding of fact which reads, "J. H. Downs . . . had no reason to expect that the notes would be paid by the Orah Land and Mining Co. if presented for payment," was not supported by evidence. There was no direct evidence on that question, but the circum-

stances surrounding the execution of the notes and surrounding the financial condition of the Orah Land and Mining Company were sufficient to justify the court in making that finding.

2. That part of the tenth finding of fact which reads, "J. H. Downs signed the notes in suit for his own accommodation," is largely, if not wholly, a conclusion of fact from the facts previously set out in the findings of the court. There is nothing in the previous findings to justify that conclusion. There is nothing in the evidence abstracted, other than the signatures, to indicate the capacity in which defendant Downs signed his name on the notes, nor to indicate that he directly received any consideration. There was no evidence on which to base that finding as a finding of fact or as a conclusion of fact.

3. What was the nature of the liability of Downs? The court concluded that he was liable as a maker of the notes. To support that conclusion, it may be argued that because Downs was a stockholder in the Orah Land and Mining Company, he derived a benefit from that received by the corporation in the execution of the notes. Other than this argument, there is nothing to support the conclusion that Downs was liable as a maker of the notes, and the argument is not good. This language is found in 14 C. J. 868:

"A member or stockholder may deal or contract with the corporation in the same manner as any other individual, and in so doing he acquires the same rights and incurs the same liabilities as any stranger would."

(See, also, *Morbach v. Mining Co.,* 53 Kan. 731, 739, 37 Pac. 122; 14 C. J. 56; 1 Cook on Corporations, 7th ed., § 11.) Downs was also an officer and a director in the Orah Land and Mining Company, but his liability is fixed by the negotiable-instruments law, and is not in any way controlled or modified by the law of corporations. Downs was an indorser and was liable as such. He may have been an accommodation indorser, but he was not one for his own accommodation. Therefore, notice to him of the dishonor of the note was necessary.

The notes are Missouri contracts and are governed by the laws of Missouri. (*Briggs v. Latham,* 36 Kan. 255, 13 Pac. 393; *Loan Co. v. Solomon,* 71 Kan. 185, 186, 79 Pac. 1077.)

The Missouri negotiable-instruments law was pleaded and introduced in evidence. The pertinent sections are as follow:

"Where the language of the instrument is ambiguous, or . . . where a signature is so placed upon the instrument that it is not clear

Crane v. Downs.

in what capacity the person making the same intended to sign, he is to be deemed an indorser." (R. S. Mo. 1909, § 9988.)

"An accommodation party is one who has signed the instrument as a maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party." (R. S. Mo. 1909, § 10000.)

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." (R. S. Mo. 1909, § 10033.)

"Presentment for payment is not required in order to charge an indorser where the instrument was made or accepted for his accommodation and he has no reason to expect that the instrument will be paid if presented." (R. S. Mo. 1909, § 10050.)

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged." (R. S. Mo. 1909, § 10059.)

"Notice of dishonor may be waived, either before the time of giving notice has arrived or after the omission to give due notice, and the waiver may be express or implied." (R. S. Mo. 1909, § 10079.)

"Notice of dishonor is not required to be given to an indorser in either of the following cases: (1) Where the drawee is a fictitious person or a person not having capacity to contract, and the indorser was aware of the fact at the time he indorsed the instrument; (2) where the indorser is the person to whom the instrument is presented for payment; (3) where the instrument was made or accepted for his accommodation." (R. S. Mo. 1909, § 10085.)

The negotiable-instruments law of Kansas is the same as that of Missouri.

This case is controlled by *Auto Co. v. Winters*, 277 Mo. 425. There C. F. Winters signed a note and W. B. Strang signed it on the back without any words of explanation. The syllabus, which correctly states the conclusions reached by that court, reads:

"1. Under the negotiable-instrument law (sec. 10033, R. S. 1909) a person who places his name upon the back of a negotiable note is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.

"2. And the words of the statute 'unless he clearly indicates by appropriate words his intention to be bound in some other capacity' mean words written on the instrument itself, and hence the legal effect of a

blank indorsement cannot be changed or varied by parol evidence or from any other source.

"3. If the note sued on is set out in full in the petition and shows that the name of one of the defendants appears on the back thereof, it shows him to be an indorser and to be sued as such, and this setting forth of the note corrects any misrecitation in a prior paragraph of the petition that said defendant was a co-maker.

"4. Unless an indorser comes within the exceptions mentioned in the statute (secs. 10050 and 10085, R. S. 1909), notice of dishonor by non-payment or presentment for payment must be made, or he will be discharged.

"5. If the indorser of a negotiable note is the party accommodated by making the instrument, he is not entitled to notice as provided by section 10085, nor is it necessary under section 10050 to show presentment unless he had no reason to expect the note would be paid when presented. But 'the party accommodated' is the one for whose convenience the paper was made, and that usually means the maker or drawer, and not the indorser.

"6. Section 10050 says that 'presentment for payment is not required in order to charge an indorser where the instrument was made or accepted for his accommodation' and section 10085 says that 'notice of dishonor is not required to be given to an indorser where the instrument was made or accepted for his accommodation.' *Held*, that the word 'accommodation' means a convenience, favor or benefit, or an arrangement or engagement made as a favor to another, not upon a consideration received, and 'the party accommodated' is the one for whose convenience the paper is made. The accommodation party is the one who signs the note for the purpose of 'lending his name to some other person,' and the other person is necessarily the accommodated party."

The judgment is reversed, and judgment is rendered in favor of the defendants.