165 So. 853

**CLARK v. O'NEAL et al.**

4 Div. 844.

Supreme Court of Alabama.

Dec. 19, 1935.

Rehearing Granted Jan. 23, 1936.

Further Rehearing Denied March 5, 1936.

Ralph A. Clark and E. O. Baldwin, both
of Andalusia, for appellant.

Powcll, Albritton & Albritton, of Andalusia, for appellees.

580

THOMAS, Justice.

The suit was upon a certificate of deposit drawing interest, and upon which certificate the defendants were indorsers.

This is the second appeal. O'Neal et al. v. Clark, 229 Ala. 127, 155 So. 562.

It is admitted that on the last trial the pleadings were recast.

At the outset and when the cause was for trial, there was a motion to suppress the depositions of Miss Brewington on the grounds, among others, that "the interrogatories filed by the defendant were not sworn to as required by the statute [Code 123, § 7764]," and "there was no affidavit as required by law attached to the interrogatories." The attorney for the defense testified that he in fact swore to same and asked the notary to take the acknowledgment of his oath and mail the same, and this was not done. The interrogatories were filed November 27, depositions taken December 10, 1934, and the commissioner or notary public certified to same December 19, 1934. The notary was permitted at the trial, and over plaintiff's objection, to add her signature to the jurat to the interrogatories as of date of November 24, 1934, and after the depositions were taken, returned to the court, and testimony published. There was error in this action of the court, and the depositions of the witness should have been suppressed.

The indorsers claim a discharge for want of a due presentment and notice of dishonor. The trial was had upon the complaint as amended, the original pleas as refiled by the defendants, and additional pleas 1A, 2A, 3A, 4A, 5A, 6A, and 8A. These pleas presented the defense of a lack of a due presentment to the Andalusia National Bank; that notice of dishonor of the certificate sued on had not been given to the defendants within the time required by law; that the defendants, respectively, were joint indorsers on the instrument sued on; that they were not partners as affecting such transaction; that their several

indorsements created a *contingent joint obligation;* and that the due and legal notice of dishonor was not given to each of the joint indorsers.

Demurrers were overruled to all the pleas, except plea 7A, and plaintiff sought to file replications to which demurrers were sustained.

The case was submitted to the court, without a jury, on the testimony of plaintiff and defendants, and judgment was rendered in favor of the defendants.

It is noted, as indicated by appellant's counsel, that on the former trial judgment was rendered on the instrument sued on and indorsements thereon, against R. N. McLeod, C. A. O'Neal, L. M. Milligan, and T. E. Henderson, together with Dudley L. O'Neal, as administrator of the estate of C. S. O'Neal, deceased; that of such defendants, only Dudley L. O'Neal, as administrator of the estate of C. S. O'Neal, deceased, and T. E. Henderson took an appeal, and the judgment there rendered was not appealed from by the other parties defendant, and as to them was not set aside and vacated.

The rights and status of the parties not taking an appeal in the first instance are not now to be considered. We may repeat, that here the parties defendant filing the pleas in question are Dudley L. O'Neal, as administrator of the estate of C. S. O'Neal, and T. E. Henderson; that the citation of appeal in the case before us is directed only to said parties, and the assignments of error are limited to the court's action on the trial as to such personal representative and T. E. Henderson as defendants and sole appellees.

A general statement of pertinent facts is contained in the report of O'Neal et al. v. Clark, 229 Ala. 127, 155 So. 562, 564. In that decision it was stated that the defenses then considered were "want of presentment and notice of dishonor." It was further observed that these "indorsers were original parties to the instrument"; that the "instrument was not (actually) presented for payment at maturity" at the payor's place of business; that "prior to maturity" the certificate declared upon was "filed with the receiver (of the Andalusia National Bank, the named payor in the certificate sued on) as a claim against the closed bank, and there remained at the date of maturity."

The material facts of the two records are thus stated on the first appeal:

"C. S. O'Neal, one of the indorsers, died, and an administrator of his estate was appointed prior to the maturity of the instrument.

"On January 2, 1933, the date of maturity (January 1st being on Sunday), Dr. Clark filed in the probate court a verified claim against his estate, which is set out in the report of the case, and on the same day caused a copy to be handed Dudley L. O'Neal, the administrator of such estate.

"No notice of dishonor is shown to have been given to appellant T. E. Henderson until February 23, 1933, when a letter was written demanding payment from him as a party who had guaranteed the payment of the claim.

"The indorsers resided in the town of Andalusia."

And it was there held, that "Without question * * * this instrument is subject to the requirements of law touching presentment for payment and notice of dishonor." O'Neal et al. v. Clark, 229 Ala. 127, 130, 155 So. 562, 564.

■ Dr. Clark testified that he discussed payment of his certificate of deposit with Mr. Dixon, the receiver of the payor bank, and Mr. Dixon said "he couldn't pay it"; that it was declared that proceedings had started for collection from the O'Neal estate; that he (Dr. Clark) informed the administrator of such facts and further that he had filed the certificate at the bank, and Mr. Dixon said "they would not give it any preference." These facts show such other or due presentment of the certificate was impossible to be made under the receivership of such National Bank before and at the maturity of that certificate of deposit. Section 9109, Code; Roberts v. Mason, 1 Ala. 373; Calkins v. Vaughan, 217 Ala. 56, 114 So. 570; Daniel on Negotiable Instruments (7th Ed.) § 1289. Treating this phase of the case, the court said on first appeal that "under the law, presentment was dispensed with or excused in the case at bar." O'Neal et al. v. Clark, 229 Ala. 127, 131, 155 So. 562, 565.

The questions of fact resolve to the inquiry, Was the certificate dishonored, and was due notice thereof given to the indorser or indorsers so as to bind by the indorsement? To that end we again examine the statutes, and note that in the former opinion they were carefully considered.

That opinion, in dealing with the several statutes as to notice of dishonor, cited the following: .

Section 9114 of the Code, providing that, "Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, *and any drawer or indorser to whom such notice is not given is discharged,*" and section 9121, as to notice to the personal representative in case of death of the indorser; and held that: "Notice of dishonor is made a condition to the liability of an indorser, a law-made condition, written into the contract. It is not a question of knowledge of dishonor, otherwise acquired, nor of injury to the indorser from want of notice." Hightower v. Ivy, 2 Port. 308; Calkins v. Vaughan, 217 Ala. 56, 59, 114 So. 570; Daniel on Negotiable Instruments (7th Ed.) § 1123.

No question of waiver of notice was presented on the former appeal, nor on this appeal (sections 9114, 9121, 9131, Code); neither is the question presented that it is a case where notice of dishonor is not required; not being within section 9135 of the Code.

▆▆ In the former appeal it was held, and we now adhere to those holdings, that these parties were not accommodation indorsers within the meaning of the statute, because they were officers of the bank (sections 9106, 9135, Code; O'Neal v. Clark, 229 Ala. 127, 132, 155 So. 562, and authorities collected), and that the statutory liability of stockholders of national banks to creditors of the bank for amounts equal to their respective holdings did not excuse the giving of notice of dishonor in order that indorsers might be bound (12 U.S.C.A. §§ 63, 64 and 65), and the failure to duly give the required notice resulted in the discharge of such indorsers.

It was further held, and on this holding the reversal rested, that the copy of the claim against the estate of C. S. O'Neal, one of the indorsers of the certificate of deposit, *stating that the debt was not paid and that the holder looked to the estate for payment, was not sufficient notice of dishonor* of that certificate *by nonpayment at maturity,* so as to charge the indorser under the several provisions of the statute that bind in the premises. Sections 9109, 9114, 9119 and 9121, Code.

Adverting again to the statutes as to notice of dishonor, we cite section 9114, providing that, "when a negotiable instrument has been dishonored by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged"; section 9119, prescribing the form and sufficiency of the notice as "A written notice need not be signed, and an insufficient written notice may be supplemented and validated by verbal communication. A misdescription of the instrument does not vitiate unless the party to whom the notice is given is in fact misled thereby. The notice may be in writing or merely oral and may be given in any terms which sufficiently identify the instrument and indicate that it has been dishonored by nonacceptance or nonpayment. It may in all cases be given by delivering it personally or through the mails"; and section 9121, providing for notice to a personal representative, "Where any party is dead, and his death is known to the party giving notice, the notice must be given to a personal representative, if there be one, and if with reasonable diligence, he can be found. If there be no personal representative, notice may be sent to the last residence or last place of business of the deceased."

We may observe, in passing, that the rule of the English and early American cases as to the required notice of dishonor and the sufficiency in form thereof was adverted to in Saltmarsh v. Tuthill, 13 Ala. 390, 402. However, such matter has been covered, as we have indicated, by sections 83 and 84 of the act of 1909 (Acts 1909, p. 126), and codified as section 9109 of the Code, where it is provided:

"The instrument is dishonored by nonpayment when:

"(1) It is duly presented for payment and payment is refused or cannot be obtained; or

"(2) Presentment is excused and the instrument is overdue and unpaid."

The claim filed by plaintiff against the estate of C. S. O'Neal is set out in the report of the case on first appeal, and need not be repeated. It may be noted, however, that said claim merely showed that the payee of the certificate of deposit declared upon, filed notice of the claim with Dudley L. O'Neal as the administrator of the estate of C. S. O'Neal; that a copy of the certificate was attached to the claim filed with Dudley L. O'Neal (Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90), on the back of which appeared the names of R. N. McLeod, C. A.

O'Neal, L. M. Milligan, T. E. Henderson, and C. S. O'Neal, defendant's intestate, as indorsers of the certificate; that said several indorsers were jointly and severally liable, as indorsers, for the payment thereof; that the certificate of deposit was the property of the claimant, and he, as such owner, filed a statement of the same as a claim against the estate of C. S. O'Neal, within the time required by law. It was declared on first appeal that without other and further evidence this was not sufficient notice of the dishonor of that certificate by nonpayment at maturity to charge the indorsers. That is to say, it did not give sufficient notice of its dishonor as required by the statute (a) that the certificate was presented for payment, and payment was refused or could not be obtained; or (b) that presentment was excused and the certificate is overdue and unpaid. Section 9109, Code.

In the instant trial it was undertaken to supply facts showing the dishonor, and that the required notice of dishonor was given defendant Dudley L. O'Neal, as the personal representative of the O'Neal estate, when supported by the oral evidence before us (sections 9109, 9119, Code); hence the necessity of indicating some of the oral evidence adduced in support of the claim of date of January 2, 1933, and notice thereof to the indorsers; or, under the statute, of shedding light upon (a) a due presentment, refusal, or that payment cannot be obtained, or (b) that presentment is excused and the instrument is overdue and unpaid. Sections 9109, 9114, 9119, Code 1923.

The evidence of Dr. Clark was to the effect, that on January 2, 1933, he saw Dudley L. O'Neal at his place of business and gave him an exact copy of the statement of the claim filed in the probate office (the same as set out in the report of the former appeal), and on the same occasion had a conversation with O'Neal about the certificate of deposit; that in the course of conversation he (Clark) told O'Neal he talked to Mr. Dixon, the receiver of the bank, about the certificate of deposit and Mr. Dixon said he could not pay it, that witness was starting proceedings to collect it from the estate, and was serving this paper for that purpose; that O'Neal asked witness who he had talked to with regard to receiving the certificate of deposit, and witness said Mr. McLeod was the only person connected with the bank that he had talked to; that O'Neal also said something about his father having signed a number of papers, that would make it very hard for the estate to pay all the things which his father had signed; that witness mentioned to the administrator that the certificate was indorsed by his father and recalled that O'Neal said his father had indorsed so many papers that it would be hard to pay them all; that witness mentioned that a claim or proceeding was being started against the administrator for its collection; that witness had filed the certificate at the bank (the payor) and Mr. Dixon, the receiver, said "they would not give it any preference."

On cross-examination Dr. Clark testified that he told O'Neal he had a paper, a claim for him that Mr. Baldwin had given witness to give to him, and handed it to him; that the entire conversation was taken up with a short discussion about the claim and the certificate, and Mr. McLeod; that witness told O'Neal he had a claim against his father's estate and with the paper was starting proceedings to collect from the estate, and that the paper had been prepared by Mr. Baldwin for witness to deliver to O'Neal to start these proceedings against the estate; that after O'Neal had looked at the paper he asked who had suggested that witness take the certificate of deposit or how had witness happened to get the certificate of deposit, and witness replied Mr. McLeod had suggested he take it when witness told McLeod he was going to withdraw part of his deposits; that somewhere in the course of conversation O'Neal made the statement, before the inquiries about the certificate, that his father had signed a number of papers, or indorsed a number of papers that claims were being filed on, or persons were attempting to collect, and that it would be hard for the estate to pay those, or get the money up to pay them at that time; that witness mentioned while there that he had talked with Mr. Dixon about the certificate of deposit, and Mr. Dixon had said the bank would not give it any preference; that he is not sure when that came into the conversation, but as he recalls "that also entered into it."

In answer to interrogatories, Dr. Clark stated that he did have a conversation with Dudley L. O'Neal, as administrator of the estate of C. S. O'Neal, deceased, on January 2, 1933, and in the conversation told O'Neal that he held a certificate of deposit issued by the Andalusia National Bank for

$12,000, and that O'Neal's father, C. S. O'Neal, was one of the indorsers on it; that it was due January 1, 1933, and he (Clark) had talked to Mr. Dixon, the receiver of the bank, about it, and Mr. Dixon said he could not pay it; that he had filed his claim with the receiver for the certificate, and was looking to O'Neal, as administrator of the estate of his father, and the other indorsers on the certificate, for payment of it; that in case the bank ever paid anything on the claim, this would go to the indorsers; that at this time he gave O'Neal a copy of the claim previously filed in the probate court and told the administrator that he had filed this claim with the judge of probate against his (O'Neal's) father's estate, and that this was a copy of the claim; that O'Neal said he was surprised that he (O'Neal) or his father's estate would be expected to pay the certificate, and that his father had signed so many papers that it was going to break them up to have to pay them; that this conversation was had in Mr. O'Neal's place of business; that O'Neal asked who had volunteered or suggested that Clark take a certificate of deposit, and was told that negotiations with the bank were with Mr. McLeod; that C. S. O'Neal, his father, had not been talked to about the certificate.

The witness Payne testified that Dudley L. O'Neal remarked to him as Dr. Clark went away from his place of business, at the time in question, "That is Ralph Clark's brother"; that Dudley followed him to the edge of the sidewalk, then went back into his office; that witness saw the paper handed to Dudley by Clark, and O'Neal told witness the history of the paper, which was the first witness knew of it; that O'Neal said his father indorsed a certificate of deposit for Dr. Clark and that was a paper in regard to collecting it; that the conversation was short and O'Neal talked only about the fact that his father had indorsed that paper; that witness had heard O'Neal make the remark that if he had to pay all those things it would break them up; just remembers him making such statement, but does not remember whether it was before or since Dr. Clark handed him the paper; that these things were told witness after Dr. Clark left.

Defendant Dudley O'Neal testified, in his own behalf, that when Dr. Clark came up he handed him a paper and said, "Here is a paper Mr. Baldwin told me to hand you"; that there was nothing said at that time as to the nature of the paper; that he handed the paper to witness, who asked him how he was getting along, and Dr. Clark answered, and said Mr. Baldwin told him to give the paper to witness; that witness did not recall any other words or conversation used there; that he did not go into his office while Dr. Clark was there, hardly moved from where he was standing back of his brother; that there was nothing said about Dr. Clark having filed a claim with the comptroller, Mr. Dixon, or anybody else; Dr. Clark did not make a statement to witness that he was looking to the administrator of the O'Neal estate as an indorser on that paper; that was not mentioned.

And in the course of cross-examination the witness testified as follows: "I knew about my father having endorsed this some time prior to that. Dr. Clark carried me a copy of the notice he had filed in the Probate Office, the one Dr. Clark brought me. I saw the one filed against the estate and I saw the claim which he carried me which purported to be a copy of the claim for this $12,000.00. Yes, sir, I looked at it and I saw what it was for, saw what it was."

And on redirect examination the record recites:

"Q. Do you recall whether you examined that paper immediately or after you went into your office? A. After he left there.

"Q. When you first examined it? A. Yes, sir."

A concession was made by the receivership of the payor bank on June 19, 1934, entitling the defendants to be credited with a 7 per cent. dividend authorized by the comptroller on November 28, 1933, but not available until a suit filed by the depositors against the receiver, the Reserve Bank, the Reconstruction Finance Corporation, and certain officers of the bank in the federal court was determined.

The witness Will O'Neal said: "I recall the time Dr. Clark came over there and handed my brother a paper. * * * I don't know much that Dr. Clark said when he came in there, I was shearing the mule and didn't pay much attention to what was said, but I saw him give my brother a paper."

On cross-examination: "I didn't see the paper after Dr. Clark left. Dudley didn't show it to me. I heard him say something

about the Clark Case. I didn't know anything about the certificate my father signed over at the bank. He said it was Mr. Clark over at the bank. I didn't know anything about some money that hadn't been paid and he didn't say what connection it had with the bank, but he did say something about the Clark Case, didn't say bank, just said the Clark Case. * * * I do not know what Dudley did with the paper that Dr. Clark gave him; all he said was that it was a paper in connection with the Clark Case, and that is all I heard him say, and that was after Dr. Clark left; he was talking to Payne and myself both, and I don't know what else he said to Payne about it."

The redirect examination of Dudley L. O'Neal was a denial of Clark's testimony in the respects we have indicated.

 It was decided on first appeal, and shown then and now, that due presentment of the claim could not be made by reason of the failure and receivership of the bank before the due date of the certificate, and that in such case presentment is excused. It is shown by all the evidence that the instrument was overdue and unpaid. When the documentary and oral evidence here adduced is considered, we are of opinion, and so hold, that the certificate was dishonored, and due notice of its dishonor was so given the personal representative of the indorser, C. S. O'Neal, as to bind that indorser.

The indorsement on the certificate of deposit was in blank. There is no evidence in the record of notice of dishonor of the paper being given to T. E. Henderson, the immediate and prior indorser of C. S. O'Neal, defendant's intestate. We are thus brought to consider pleas 6A and 8A as a defense under the statute to the complaint as amended.

In Falkner v. Protective Life Ins. Co., 228 Ala. 57, 152 So. 34, it was observed, that in order to state an action in due form against an indorser, it is necessary to allege the existence of the conditions of his liability or their waiver or legal excuse for their nonobservance. It is further stated that such indorsement is an original undertaking, and not a promise to pay another's debt. Hamill v. McCalla et al., 228 Ala. 281, 153 So. 412.

It is insisted by appellant, that in the absence of any separate agreement to the contrary (and this record discloses no such agreement that affected Clark, the payee),

the indorsers of a negotiable instrument are joint and several. Section 9543, Code; Robinett et ux. v. Murray, 219 Ala. 176, 121 So. 535. This statute is decisive of the right of maintenance of a suit against the last indorser, O'Neal, in the absence of a specific agreement to the contrary, or unless the Negotiable Instruments Law contains a rule to the contrary. The act of 1907 (Acts 1907, p. 660) sought to cover the whole subject of negotiable instruments and make certain and definite the rights and liabilities secured and incurred by such instruments, and to simplify the necessary procedure to be employed in respective cases. Code 1923, vol. 4, c. 321, § 9029 et seq., p. 345 et seq., Michie's Code, § 9029 et seq., p. 1616 et seq.

The immediate question for decision is the liability vel non of the last indorser, C. S. O'Neal, to a judgment; and to whom due notice of dishonor was given, when the record does not disclose notice of dishonor to the immediate or preceding indorser, T. E. Henderson. Pleas 6A and 8A present the issue and fact of such failure of notice of dishonor to Henderson. In the first appeal the letter of that notice was shown, but we fail to find that notice in this record. Was the failure of such notice to Henderson a bar to Clark's recovery against O'Neal, or his personal representative having due notice?

Several provisions of the statute may be adverted to; as section 9055 of the Code, defining an accommodation party as one "who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person," not the case here (O'Neal et al. v. Clark, 229 Ala. 127, 155 So. 562); and so far as this record discloses the indorsements in blank were without restriction, qualification, or special contract. Sections 9061–9064, Code. It is further provided that the owner and holder may at any time strike out any indorsement which is not necessary to his title, and thus relieve that and subsequent indorsement from liability on the instrument. Section 9074, Code.

Section 9076 of the Code defines the liability of intervening parties, saying: "Where an instrument is negotiated back to a prior party, such party may, subject to the provisions of this chapter, reissue and further negotiate the same; but he is not entitled to enforce payment thereof against

any intervening party to whom he was personally liable."

It is declared by section 9077, Code, that the holder of a negotiable instrument may sue thereon in his own name, and payment to him in due course discharges the instrument. The right of a holder in due course is declared, under section 9083, to be "free from any defect of title of prior parties, and free from defenses available to prior parties among themselves," and has the right to enforce "payment of the instrument for the full amount thereof against all parties liable thereon."

Under section 9089 of the Code, a person placing his signature upon an instrument otherwise than as a maker, drawer, or acceptor is liable as an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity; and under section 9090, "where a person, not otherwise a party to an instrument, places thereon his signature in blank before delivery, he is liable as indorser in accordance with the following rules: (1) If the instrument is payable to the order of a third person, he is liable to the payee and to all subsequent parties. (2) If the instrument is payable to the order of the maker or drawer, or is payable to bearer, he is liable to all parties subsequent to the maker or drawer. (3) If he signs for the accommodation of the payee, he is liable to all parties subsequent to the payee."

In section 9092, Code, it is declared that "every indorser who indorses without qualification, warrants to all subsequent holders in due course," the matters and things set out in section 9091 of the Code (Kennedy v. Hudson, 224 Ala. 17, 138 So. 282; Somerall et al. v. Citizens' Bank, 211 Ala. 630, 101 So. 429), and in addition it is declared that the indorser "engages that on due presentment, it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it." This is held to apply to an accommodation indorser. Little v. People's Bank of Mobile, 209 Ala. 620, 96 So. 763.

There is a lack of uniformity in the courts of several other states caused by the provisions of section 9094 of the Code, which declares the right of indorsers "as respects one another," and that "joint payees or joint indorsees * * * are deemed to indorse jointly and severally." This statute has no application to the facts of this case.

The statutes as to giving notice of dishonor have been indicated heretofore. However, we repeat that they declare that, except as otherwise provided, notice of dishonor must be given to the drawer and to each indorser, "and any drawer or indorser to whom such notice is not given is discharged" (section 9114, Code); "that *notice may be given by or on behalf of the holder, or by or on behalf of any party to the instrument who might be compelled to pay it to the holder, and who, upon taking it up, would have a right to reimbursement from the party to whom the notice is given.*" Section 9115, Code. (Italics supplied.)

Section 9140 of the Code sets forth the rules under which a person secondarily liable on an instrument may be discharged, viz.:

"(1) By an act which discharges the instrument.

"(2) By the intentional cancellation of his signature by the holder.

"(3) By the discharge of a prior party.

"(4) By a valid tender of payment made by a prior party.

"(5) By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved.

"(6) By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

"An omission to give notice of dishonor by nonacceptance does not prejudice the rights of a holder in due course subsequent to the omission." Section 9137, Code.

Section 9122 of the Code provides for notice to partners; and section 9123 requires notice to joint parties who are not partners, to be given to each of them, unless one of them has authority to receive such notice for the others.

■ The trial court overruled demurrers to pleas 6A and 8A, to which action of the court appellees' counsel say, that "even if the pleas did not set up legal defenses, there were other good pleas in the case"

to support the finding and judgment rendered. They, however, insist that these pleas presented full answer to the complaint as amended, and cite sections 9114–9138, and especially section 9123 of the Code, to the effect that "notice to joint parties who are not partners must be given to each of them, unless one of them has authority to receive such notice for the others." They insist that section 9094, Code, does not make joint indorsers of negotiable instruments *liable jointly and severally*. We agree that this statute merely declared the rule "as respects one another" of the indorsers (accommodation as well as regular indorsers), and does not affect the rights of the payee or his indorsee.

■ In Blumberg v. Speilberger, 209 Ala. 278, 280, 96 So. 191, 192, the long-recognized rule is quoted with approval:

"In Brahan & Atwood [v. Ragland], 3 Stew. 247, and later in Sherrod v. Rhodes, 5 Ala. 683, 691, it was held that—

" 'The fact merely, that two or more persons were successive accommodation indorsers for another, did not make them cosureties, but that to constitute that relation there must be an agreement between them to that effect, or some fact or circumstance must exist from which it may be inferred that they intended to be bound as cosureties, although they have not signed the instrument jointly, but successively.'

"This has always been the law."

In New York & Alabama Contracting Company v. Selma Savings Bank, 51 Ala. 305, 308, 23 Am.Rep. 552, it was observed that the object of notice of dishonor was to give the drawer or indorser seasonable opportunity to protect himself, and "the injury which may be consequent on the failure to afford the drawer this seasonable opportunity, by notice of the dishonor, is the reason of his discharge."

The correct rule, or that of the better-considered cases, is thus stated in Doherty v. First Nat. Bank of Louisville, 170 Ky. 810, 186 S.W. 937, 940:

"In this connection it is argued that the defendant and the other indorsers were joint indorsers, and that a failure to give notice to the other indorsers released the defendant. This precise question was before this court in the case of Williams v. Paintsville Nat. Bank, 143 Ky. 781, 137 S.W. 535, Ann.Cas.1912D, 350, where the court, after consideration of the Negotiable Instruments Act, announced the rule that a failure to give notice of dishonor to all of the joint indorsers did not have the effect of discharging those to whom notice was actually given. We are now asked to overrule this opinion on the ground that the court, in reaching this conclusion, failed to take into consideration the provision of subsection 100, § 3720b, Kentucky Statutes, which provides that:

" 'Notice to joint parties who are not partners must be given to each of them, unless one of them has authority to receive such notice for the other.'

"As a matter of fact, however, the court did not overlook this provision of the Negotiable Instruments Act, but correctly concluded that its only effect is to require notice of dishonor to be given to each of the joint indorsers whom it is sought to hold liable, and to discharge only those to whom notice is not given."

The Kentucky statute (section 3720b-100), now urged as the reason for O'Neal's discharge, is the same as section 9123 of the Code of 1923.

■ The parties before us signed the instrument as an original undertaking (O'Neal et al. v. Clark, 229 Ala. 127, 155 So. 562) to secure the payee's funds for the drawer (Negotiable Instruments, Melton v. Brown, 25 Fla. 461, 6 So. 211); and by such act on delivery the obligation of the indorsers to the payee *became joint and several*, under the general law of contracts.

It results from the foregoing that the judgment of the circuit court as to T. E. Henderson is affirmed; and as to Dudley L. O'Neal, as administrator of the estate of C. S. O'Neal, is reversed and the cause is remanded. It is not intended by this opinion in any way to decide the question of T. E. Henderson's liability vel non in an attempt for contribution by the personal representative of C. S. O'Neal. This is another question not now decided.

The costs of this appeal are taxed against the appellee Dudley L. O'Neal, as administrator of the estate of C. S. O'Neal.

Affirmed in part, and in part reversed and remanded.

BOULDIN, BROWN, and KNIGHT, JJ., concur.

On Rehearing.

THOMAS, Justice.

This case was before this court and reported as O'Neal et al. v. Clark, 229 Ala. 127, 155 So. 562. The question now presented on this rehearing was not then urged or considered by Mr. Justice BOULDIN, writing for the court.

In the original brief filed by appellees on this appeal, the fact that the notice was given (if given at all) on the day before the actual maturity of the paper was not called to the attention of the court by counsel for appellees; hence this court did not consider the question of the insufficiency of the notice on account of being given prematurely.

On the former appeal we held that: "A certificate of deposit, such as here involved, having all the requirements of negotiability defined by law, is a negotiable instrument. In effect, it is a promissory note. First National Bank of Abbeville v. Capps, 208 Ala. 235, 94 So. 112; Elmore County Bank v. Avant, 189 Ala. [418] 425, 66 So. 509; O'Neal v. Peaden, supra [228 Ala. 21, 151 So. 877].

"Without question, therefore, this instrument is subject to the requirements of law touching presentment for payment and notice of dishonor." O'Neal et al. v. Clark, 229 Ala. 127, 130, 155 So. 562, 564.

We are still satisfied that we were correct in holding the instrument sued upon in this case to possess all the qualities of a negotiable instrument, and was, in fact, such an instrument; and as such an instrument was subject to the requirements of the Negotiable Instrument Law, constituting chapter 321 of the Code (section 9029 et seq.).

It appears from the evidence in this case that the instrument sued upon was executed on January 1, 1932, and was payable 12 months after date.

In 8 Corpus Juris, page 401, it is said: "In reckoning the time of maturity of paper governed by the Law Merchant, a 'month' is taken as meaning a calendar month, so that a bill or note dated on a certain day, and payable one or more months after date, becomes due on the *same day* as its date of the month in which it is payable, or on the third day thereafter, if entitled to grace, unless such month, being shorter, lacks such day, in which case the paper will become due on the last day of the month."

In Doyle v. First National Bank, 131 Ala. 294, 30 So. 880, 90 Am.St.Rep. 41, this court held that a note which is executed on " 'November 11, 1899,' and is made payable 'six months fixed after date,' matures on the 11th day of May following, and such note is *subject to protest for nonpayment on that date.*" This implies, of course, that it was not subject to protest upon the day before its maturity.

Section 9110, Code, provides: "Every negotiable instrument is payable at the time fixed therein without grace. When the day of maturity falls upon Sunday, or a holiday, the instrument is payable on the next succeeding business day."

There can be no doubt of the fact that the "next business day" means, and can only mean, the next day which is not a holiday, for within the meaning of the Negotiable Instrument Law a "holiday" is not a business day.

The instrument sued on fell due on January 1, 1933. This was Sunday, and the note, therefore, fell due on the next succeeding business day. Monday, January, 2, 1933, being a holiday, section 9215 of the Code, was not the "next succeeding business day," and, therefore, the instrument did not become due and payable, and subject to protest and notice of dishonor for nonpayment, until Tuesday, January 3, 1933. Hagerty v. Engle, 43 N.J.Law 299.

Whatever notice of nonpayment and dishonor of the note was given, confessedly, was given on Monday, January 2, 1933, the day next before the day on which the instrument became due.

It seems to be generally held that officers and stockholders of a corporation who lend it their credit, acting as individuals, by indorsing its negotiable promissory note, and the proceeds on negotiation of the note are received by the corporation, stand in such relation to the paper as entitled them to notice of its dishonor. O'Neal v. Clark, supra; First National Bank v. Bickel, 143 Ky. 754, 137 S.W. 790; Nolan v. H. E. Wilcox Motor Co., 137 Tenn. 667, 195 S.W. 581; McDonald v. Luckenbach, 95 C.C.A. 604, 170 F. 434; Mechanic v. Elgie Iron Works, 98 Misc. 620, 163 N.Y.S. 97; Crane v. Downs, 108 Kan. 599, 196 P. 600; Frazee v. Phoenix

Nat. Bank, 161 Ky. 175, 170 S.W. 532; Grandison v. Robertson, 145 C.C.A. 605, 231 F. 785; Overland Auto Co. v. Winters, 277 Mo. 425, 210 S.W. 1; First Nat. Bank v. Bach, 98 Or. 332, 193 P. 1041.

The corporation is a legal entity, and having received all the proceeds of the deposit, the debt. is the debt of the corporation, and not primarily the debt of the stockholder indorsers. The sole purpose of the indorser was to lend the credit of their names. The instrument executed was not. executed for the accommodation of the indorsers, as we have heretofore held in this case.

The liability of the indorsers was secondary and contingent. The fact of maturity plus the fact of nonpayment do not produce liability. The contract of indorsement requires, as the sine qua non of liability, in the absence of a waiver, *presentment of the instrument for payment at the proper time and place*, and due notice of dishonor. Code, § 9114; Case v. McKinnis, 107 Or. 223, 213 P. 422, 32 A.L.R. 167; Grapes v. Willoughby, 93 Vt. 458, 108 A. 421; Tucker v. Mueller, 287 Ill. 551, 122 N. E. 847; Ingalls v. Marston, 121 Me. 182, 116 A. 216; Williams v. Paintsville Nat. Bank, 143 Ky. 781, 137 S.W. 535, Ann.Cas. 1912D, 350; State Nat. Bank v. Vickery (Tex.Com.App.) 206 S.W. 841; Hastings v. Grump, 89 W.Va. 111, 108 S.E. 600.

Of course, the contingent liability of the indorser does not become a fixed and consummated liability unless all required steps, *due* presentment and *due* notice of dishonor, are taken.

Assuming that presentment was dispensed with, or given, the second step must also be taken, and if omitted, it, the omission, is fatal to the fixation of liability.

It appears, as we have heretofore pointed out, that whatever notice was given the personal representative of C. S. O'Neal, deceased, was given on Monday, January 2, 1933, the day before the note actually fell due. Was this sufficient? We are constrained to hold it was not.

Section 9114 of the Code provides: "Except as herein otherwise provided, when a negotiable instrument *has been dishonored* by nonacceptance or nonpayment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

The plain, certain, and unambiguous meaning of this section is that the instrument must *have been actually* dishonored before the notice can be given to be efficacious. Until payment has been refused, it, the instrument, has not been dishonored for nonpayment. Any notice of nonpayment, prior to the occurrence of the actual event, would neither speak the truth on the one hand, nor satisfy the terms of the statute on the other. It is notice that the instrument was not paid at its maturity, on due presentation, that the statute requires to reduce the contingent liability of the indorser to a consummated liability.

In Daniel .on Negotiable Instruments (7th Ed.) § 1196, p. 1258, it is broadly stated: "It is quite clear that notice of dishonor implies the dishonor as taking place before notice. Knowledge by anticipation that the instrument will be dishonored does not affect the rule, and if notice be given beforehand it is premature and ineffectual." Chitty on Bills, § (482) 544.

Notice given before the paper becomes due is premature and insufficient. Case v. McKinnis, supra; Mechanics' & Farmers' Sav. Bank v. Katterjohn, 137 Ky. 427, 125 S.W. 1071, Ann.Cas.1912A, 439; Hart v. Smith, 15 Ala. 807, 50 Am.Dec. 161; Horton v. Wilson, 175 N.C. 533, 95 S.E. 904; Code, §§ 9125, 9114.

"Indorser's knowledge that the maker was in default on the note does not dispense with notice of dishonor, and failure to notify the indorser discharges not only his obligation on the instrument but also the debt for which the instrument was given." Kane v. Eastman (Cal.App.) 288 P. 819, (where many authorities are collected and cited); Brannon's Negotiable Instrument Law, (5th Ed.) § 89, page 830.

In 8 Corpus Juris, § 918, p. 562, it is said: "By analogy to the rule that a demand made before the paper becomes due is invalid, notice given before the paper becomes due is necessarily so, since every notice to be available must be based on a legal demand, and the fact that notice is given prematurely by a mistake in reckoning the date of the maturity of the paper creates no exception to the rule."

In the case of Curry v. Mobile Bank, 8 Port. 360, and Crenshaw v. McKiernan, Minor, 295, it was held that notice of dishonor might be given, at the option of the holder on the day of the dishonor, but

this holding negatives the right of such holder to give the notice prior to the day the paper fell due, and, therefore, before it was in fact dishonored.

It follows that the rehearing prayed for must be granted, and it is so ordered.

We hold that notice given to the personal representative of C. S. O'Neal, deceased, was prematurely given, and was invalid. This being true, the plaintiff showed no right to a recovery against either defendant in the cause.

Rehearing granted, and the judgment reversing the cause as against the appellee Dudley L. O'Neal, as administrator of the estate of C. S. O'Neal, is set aside, and the cause affirmed.

BOULDIN, BROWN, and KNIGHT, JJ., concur.